13-911-cr
United States v. Watts

**UNITED STATES COURT OF APPEALS**
FOR THE SECOND CIRCUIT

———————

August Term, 2013

(Argued: April 7, 2014     Decided: May 4, 2015)

Docket No. 13-911-cr

———————

UNITED STATES OF AMERICA,

*Appellee*,

AMALGAMATED BANK,

*Interested Party-Appellee*,

— v. —

RODNEY WATTS,

*Defendant-Appellant*,

DEPETRIS & BACHRACH, LLP,

*Interested Party-Appellant*,

COURTNEY DUPREE, THOMAS FOLEY,

*Defendants*,

EMILIO SERRANO, MICROSOFT CORPORATION,

*Interested Parties.*

_____

B e f o r e:

KEARSE, CALABRESI, and LYNCH, *Circuit Judges.*

_____

Defendant-appellant Rodney Watts and interested party-appellant DePetris & Bachrach, LLP appeal from a judgment of the district court dismissing their petition for an ancillary hearing to adjudicate their claims to property found subject to forfeiture under 18 U.S.C. § 982(a)(2) following the conviction of defendant Courtney Dupree.  The district court found that an assignment of the contested property to DePetris & Bachrach gave appellants standing to assert an interest in the property under 21 U.S.C. § 853(n)(2), but that appellants failed to state a plausible claim for relief under 21 U.S.C. § 853(n)(6) because the assignment gave DePetris & Bachrach no interest in the funds at the time of the criminal offense, see id. § 853(n)(6)(A), and because the government's forfeiture allegations gave DePetris & Bachrach reasonable cause to believe that the funds

2

were subject to forfeiture, see id. § 853(n)(6)(B).  We agree with the district court that the assignment suffices to give appellants standing to seek an ancillary hearing and that appellants have failed to state a superior claim to the property under 21 U.S.C. § 853(n)(6)(A).  However, we conclude that appellants' petition states a plausible claim that DePetris & Bachrach reasonably lacked cause to believe that the property was subject to forfeiture and consequently entitles appellants to continue pursuing relief under 21 U.S.C. § 853(n)(6)(B).

AFFIRMED IN PART AND VACATED IN PART.

––––––––––––

RONALD E. DEPETRIS (Marion Bachrach, Thompson & Knight LLP, *on the brief*), Southampton, New York, *for Defendant-Appellant* Rodney Watts *and Interested Party-Appellant* DePetris & Bachrach, LLP.

BRIAN D. MORRIS, Assistant United States Attorney (Varuni Nelson and Michael L. Yaeger, Assistant United States Attorneys, of Counsel, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

––––––––––––

GERARD E. LYNCH, *Circuit Judge*:

Defendant-appellant Rodney Watts and his counsel, interested party-appellant DePetris & Bachrach, LLP ("D&B"), appeal from a judgment of the

United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *Judge*), granting the government's motion to dismiss their petition asserting an interest in property found subject to forfeiture under 18 U.S.C. § 982(a)(2) following the conviction of Watts's co-defendant, Courtney Dupree. Watts and D&B (jointly, "petitioners") claim that, as the beneficiary of an assignment transferring a portion of the forfeited property in exchange for legal services, D&B (1) possessed a superior interest in that portion of the property under 21 U.S.C. § 853(n)(6)(A), and (2) was a bona fide purchaser reasonably without cause to believe that the contested property was forfeitable under 21 U.S.C. § 853(n)(6)(B). They also claim that the contested funds cannot be reached by a forfeiture order under § 982(a)(2) because Dupree, the criminal defendant, never owned the funds in question. Finally, they claim that the government lacks standing to challenge the validity of D&B's assignment under state law. The government responds that petitioners fail to state a claim on any of their grounds for relief and, regardless, lack standing to seek an ancillary hearing because D&B's assignment was a fraudulent conveyance. The district court determined that both parties had standing to litigate the issues, but agreed with the government that petitioners failed to state any claims for relief.

4

We affirm in part and reverse in part. Because the government's forfeiture claim qualifies it as a creditor under New York law, the government has standing to challenge D&B's assignment as a fraudulent conveyance. Because the record fails to establish whether the transferor of the contested funds was insolvent at the time of the transfer so as to render D&B's assignment a fraudulent conveyance, the petitioners have, at this stage in the proceedings, alleged a plausible interest in the property sufficient to create standing to seek an ancillary hearing. Because the contested funds are subject to forfeiture as "proceeds" of Dupree's criminal activity and therefore only came into existence following the commission of his criminal act, petitioners cannot claim that D&B had a superior interest in those funds at the time of the offense as required by 21 U.S.C. § 853(n)(6)(A). Because the criminal forfeiture statute limits a third party's right to challenge a post-indictment forfeiture order to the two grounds identified in 21 U.S.C. § 853(n)(6), petitioners may not challenge the inclusion of the contested funds in the forfeiture order under § 982(a)(2).

We disagree, however, with the district court's conclusion that petitioners failed to state a plausible claim to relief under § 853(n)(6)(B). Because D&B accepted the assignment of the contested funds shortly after a <u>Monsanto</u> hearing

5

in which the district court determined that the government failed to establish probable cause to restrain the contested property, and because the petition alleges no additional facts suggesting that D&B had reason to know that the property was forfeitable as a matter of law, petitioners have plausibly alleged that D&B was a bona fide purchaser reasonably without cause to believe that the property was subject to forfeiture.

## BACKGROUND

I.    The Indictment

In July 2010, two magistrate judges in the Eastern District of New York issued a series of warrants authorizing the government to seize several bank accounts associated with GDC Acquisitions, LLC ("GDC") as property constituting or derived from proceeds traceable to a conspiracy to commit bank fraud, mail fraud, and wire fraud under federal law.  The bank accounts seized included four accounts at JP Morgan Chase Bank in the name of Unalite Southwest, LLC ("USW"), a wholly-owned subsidiary of GDC, containing a total of $983,790.11.  On August 13, 2010, a grand jury indicted Courtney Dupree, GDC's president and chief executive officer, Rodney Watts, GDC's chief financial officer or chief investment officer, and Thomas Foley, GDC's outside counsel or

6

chief operating officer, on charges of bank fraud in violation of 18 U.S.C. § 1344; conspiracy in violation of 18 U.S.C. § 1349 to commit bank, mail, and wire fraud in violation of 18 U.S.C. §§ 1344, 1341, and 1343; and making false statements to influence a federally insured financial institution in violation of 18 U.S.C. § 1014. The indictment alleged that, between January 2007 and July 2010, Dupree, Watts, and Foley participated in a scheme to defraud Amalgamated Bank ("Amalgamated") by obtaining or attempting to obtain loan funds worth up to $21 million for three wholly-owned subsidiaries of GDC on the basis of false financial statements and other material misrepresentations.

The August 13, 2010 indictment, as well as all subsequent superseding indictments, included a criminal forfeiture allegation under 18 U.S.C. § 982(a)(2)(A), giving notice of the government's intent to "seek forfeiture . . . of any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses." On February 22, 2011, the government also filed a Bill of Particulars identifying nine bank accounts that it sought to have forfeited, including the four USW accounts at JP Morgan Chase.

7

II.     Pretrial Restraint of Seized Funds

On January 10, 2011, Watts, represented by D&B, filed a motion seeking release of the seized funds for use in paying his legal fees during the criminal prosecution. After initially denying Watts a hearing, the district court directed then-Magistrate Judge Joan M. Azrack to conduct a hearing pursuant to United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991), on the limited issue of the forfeitability of USW's four accounts at JP Morgan Chase. On July 27, 2011, the district court adopted in part and modified in part Judge Azrack's Report and Recommendation. While finding that the government had demonstrated probable cause to restrain $350,290.87 of USW's funds in the JP Morgan Chase accounts as traceable to the proceeds of the charged offense, it found that the government had failed to demonstrate probable cause to restrain the remaining $633,499.24 (the "contested funds"). The district court consequently ordered the government to "release the remaining funds to [USW] promptly." App'x at 128. After the government requested a stay of the order the following day, the district court entered a 30-day stay on August 2, 2011.

On August 11, 2011, USW, acting through Dupree's "Attorney in Fact," executed an assignment (the "Assignment") of all its interests in the contested

8

funds to D&B.  In relevant part, the Assignment stated:

> In payment of invoices . . . for past legal services and for future legal services that Assignee has provided or will provide to Rodney Watts, Jr. . . . , and in partial satisfaction of the obligation of the Assignor . . . to advance funds for Mr. Watts' defense, all deemed good and valuable consideration received, Assignor hereby unconditionally and irrevocably assigns, grants, and transfers all rights, title, interest, and obligation in, to and under . . . [a]ll funds in the Assignor's bank accounts . . . at JPMorgan Chase Bank . . . .  The Assignor warrants and represents that the aforementioned rights, title, interest and benefits are free from all liens and encumbrances, except to the extent that the United States seeks forfeiture.

App'x at 152.  That same day, the government filed a motion seeking reconsideration and clarification of the district court's July 27, 2011 order.  In addition to requesting a reappraisal of the district court's probable cause determination, the government sought clarification as to whether it should release the contested $633,499.24 to Watts or to Amalgamated, in light of Amalgamated's preexisting lien on all of GDC's accounts.

At a hearing held on September 13, 2011, the district court denied the request to revisit its probable cause determination.  It further declined to resolve D&B's and Amalgamated's competing claims to the property, and instead directed the government to deposit the $633,499.24 in the Seized Asset Deposit

9

Fund at the Eastern District of New York pending further orders from a court with jurisdiction over the dispute.

Watts appealed the district court's refusal to release the contested funds, and the district court stayed his criminal case pending appellate review. In the meantime, the criminal charges against Dupree and Foley proceeded to a jury trial in early December 2011. On December 30, 2011, the jury convicted Dupree of bank fraud, conspiracy to commit bank fraud, and two counts of making false statements under 18 U.S.C. § 1014. It acquitted Foley of all charges. On January 3, 2012, the same jury returned a Special Verdict finding that Dupree had obtained funds constituting or derived from the proceeds traceable to his offenses in the amount of $18,157,000, and that the funds in the eight bank accounts seized by government, including USW's four accounts at JP Morgan Chase, were all subject to forfeiture as assets derived from proceeds traceable to those offenses. The district court entered a preliminary order of forfeiture as to all the funds seized from the eight accounts.

On April 30, 2012, in an unpublished summary order, a panel of this Court held that the district court's preliminary order of forfeiture following Dupree's conviction mooted Watts's appeal of the district court's September 2011 orders

regarding release of the contested funds.  Emphasizing that the "district court's finding that the government lacked probable cause to continue to restrain the funds [at the <u>Monsanto</u> hearing] . . . did not bar the government from seeking the forfeiture of the funds following a trial," the panel concluded that any remaining claims Watts might have to the contested $633,499.24 should be adjudicated through a post-trial ancillary hearing.  <u>United States v. Watts</u>, 477 F. App'x 816, 817 (2d Cir. 2012).

III.    <u>Ancillary Hearing</u>

On May 8, 2012, pursuant to the procedures governing third-party claims to assets subject to forfeiture under 18 U.S.C. § 982, the government sent written notice of the district court's preliminary orders of forfeiture to potential claimants, including Watts and D&B.  On June 7, 2012, Watts and D&B filed a joint Verified Petition (the "Petition") claiming an interest in the contested funds on the basis of the August 11, 2011 Assignment.  The Petition alleged that Watts's employers had previously promised to pay any legal fees associated with his criminal charges, and that USW's conveyance of its interests in the contested funds to D&B partially satisfied this preexisting "obligation . . . to advance funds for Mr. Watts' defense."  App'x at 136.  Petitioners claimed that D&B was

11

therefore entitled to the contested funds on two grounds: first, as heir to USW's superior interest in the JP Morgan Chase accounts as true owners of the funds under 21 U.S.C. § 853(n)(6)(A), and second, as a bona fide purchaser for value reasonably without cause to believe the funds were subject to forfeiture under 21 U.S.C. § 853(n)(6)(B).[1]

On August 10, 2012, the government moved to dismiss the Petition. First, it argued that D&B lacked any cognizable claim to the forfeited assets because the August 11, 2011 Assignment was a fraudulent conveyance, made by an insolvent transferor without fair consideration in violation of New York law. Second, it argued that D&B could not state a claim for relief under either prong of 21 U.S.C. § 853(n)(6), because D&B received the Assignment of the contested funds long after the commission of Dupree's offense, see id. § 853(n)(6)(A), and because D&B had notice that the government sought forfeiture of the funds and failed to purchase those funds for value, see id. § 853(n)(6)(B). Petitioners responded by contesting the government's standing to dispute the validity of the Assignment under state law and filing a cross-motion for judgment on the pleadings.

---

[1] Watts joined the Petition as a third-party beneficiary of the Assignment to D&B. The parties do not challenge his status as a third-party beneficiary on appeal.

12

On January 28, 2013, the district court granted the government's motion to dismiss and denied petitioners' cross-motion for judgment on the pleadings. See United States v. Dupree, 919 F. Supp. 2d 254, 259 (E.D.N.Y. 2013). As a preliminary matter, the district court dismissed petitioners' attacks on the government's standing as contrary to the language of the forfeiture statute, which expressly empowered the government to rebut a petitioner's claims in an ancillary forfeiture proceeding. See id. at 264-65. Nevertheless, it determined that the facts alleged in the Petition, assumed to be true, plausibly asserted that the Assignment was a valid transfer, giving petitioners standing to stake their claim to the contested funds. See id. at 267.

On the merits, however, the district court agreed with the government that petitioners had failed to state any plausible claim for relief. First, it held that petitioners could not claim priority of ownership over the contested funds under § 853(n)(6)(A) because, contrary to that provision, the Assignment granting D&B an interest in the funds occurred years after the start of Dupree's criminal conspiracy. See id. at 268-69. Second, it held that petitioners could not qualify for relief under § 853(n)(6)(B) because, even assuming that D&B had purchased USW's funds for value, it was undoubtedly aware, as Watts's counsel of record,

13

that the government sought forfeiture of those funds. See id. at 270. Taken together, the government's initial seizure of the funds in July 2010, the forfeiture count included in Watts's indictment as early as August 13, 2010, and the government's Bill of Particulars identifying USW's four accounts for potential forfeiture ensured that D&B "had notice that the funds were forfeitable since well before the execution of the Assignment on August 11, 2011." Id.

The district court rejected petitioners' argument that its July 27, 2011 determination that the government had failed to establish probable cause to restrain $633,499.24 left D&B reasonably without cause to suspect that those particular funds were still subject to forfeiture. Because, as this Court noted in dismissing Watts's appeal, the government's failure to establish probable cause at the Monsanto hearing "'did not bar the government from seeking the forfeiture of the funds following a trial'" and consequently "did not foreclose the ultimate forfeitability of the [property]," id. at 271-72, quoting Watts, 477 F. App'x at 817, the district court insisted that its July 27, 2011 order could not have stripped D&B of reasonable cause to believe that the funds could still be forfeited following trial.

14

Similarly, the district court rejected petitioners' claims that D&B had no grounds to suspect that the funds were subject to forfeiture because USW, rather than Dupree, owned the bank accounts in question.  Noting that 21 U.S.C. § 853(a)(1), which is incorporated into 18 U.S.C. § 982, explicitly authorizes the forfeiture of "any property" "derived" from proceeds of a defendant's offense, and that the jury in Dupree's trial had found that the funds in all four bank accounts traced back to Dupree's conspiracy, the court concluded that USW's ownership of the accounts neither precluded the forfeiture nor affected D&B's entitlement to relief as a bona fide purchaser under § 853(n)(6)(B).  Id. at 273-74.

**DISCUSSION**

I.     Legal Standards Governing Forfeiture

Section 982 of Title 18 of the United States Code prescribes different forfeiture penalties for different categories of federal crimes.  See 18 U.S.C. § 982(a).  In seeking forfeiture of USW's accounts in this case, the government relies on 18 U.S.C. § 982(a)(2), which provides:

> The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate . . . section . . . 1341, 1343, or 1344 of this title, affecting a financial institution, . . . shall order that the person forfeit to the United States any property constituting, or derived from,

15

> proceeds the person obtained directly or indirectly, as the
> result of such violation.

18 U.S.C. § 982(a)(2). The procedures surrounding forfeiture under § 982(a)(2),

"including any seizure and disposition of the property and any related judicial or

administrative proceeding," are governed by the provisions of 21 U.S.C. § 853.

Id. § 982(b)(1).

Among other things, § 853 establishes the procedures by which a third

party may claim an interest in funds ordered forfeited to the United States. As a

general matter, the section clarifies that "[a]ll right, title, and interest in

property . . . [subject to criminal forfeiture] vests in the United States upon the

commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c); see also Caplin

& Drysdale, Chartered v. United States, 491 U.S. 617, 627 (1989) ("[Section] 853(c)

reflects the . . . long-recognized and lawful practice of vesting title to any

forfeitable assets, in the United States, at the time of the criminal act . . . .").

Should an innocent third party claim a legal interest in the forfeitable

property, however, § 853(n) allows him to recover his interest through an

ancillary proceeding following the preliminary forfeiture order. See id. § 853(n);

Willis Mgmt. (Vt.), Ltd. v. United States, 652 F.3d 236, 246 (2d Cir. 2011). Under

§ 853(n), any third party "asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). The petition, which is sworn and signed by the petitioner, "shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." Id. § 853(n)(3).

At the hearing, the petitioner must first establish his standing to challenge the forfeiture order by demonstrating a "legal interest" in the forfeited property under § 853(n)(2). United States v. Ribadeneira, 105 F.3d 833, 835 (2d Cir. 1997); see also United States v. Timley, 507 F.3d 1125, 1129 (8th Cir. 2007). The petitioner must then prove his entitlement to relief on the merits by establishing, through a preponderance of the evidence, one of two superior claims to the property under § 853(n)(6). See 21 U.S.C. § 853(n)(6); Pacheco v. Serendensky, 393 F.3d 348, 351 (2d Cir. 2004). Under § 853(n)(6)(A), the petitioner must demonstrate that he "has a legal right, title, or interest in the property, . . . [that] was vested in the petitioner rather than the defendant or was superior to any

17

right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A). Under § 853(n)(6)(B), the petitioner must demonstrate that he "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." Id. § 853(n)(6)(B).

At the hearing, the petitioner "may testify and present evidence and witnesses on his own behalf." Id. § 853(n)(5). In response, the "United States may present evidence and witnesses in rebuttal [of the petitioner's claims] and in defense of its claim to the property," including "cross-examin[ing] witnesses who appear at the hearing." Id. If the court determines by a preponderance of the evidence that the petitioner has a superior interest in the property, the court "shall amend the order of forfeiture in accordance with its determination." Id. § 853(n)(6). Following an advance disposition of any third-party petitions, however, or in the absence of any such petitions, "the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." Id. § 853(n)(7).

The procedures governing ancillary proceedings under § 853(n) are further elaborated in Rule 32.2(c) of the Federal Rules of Criminal Procedure. Willis, 652 F.3d at 241. Rule 32.2(c)(1) provides that, where "a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding." Fed. R. Crim. P. 32.2(c)(1). Without proceeding to a formal hearing, however, the "court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Id. 32.2(c)(1)(A). A motion to dismiss a third-party petition "should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." Willis, 652 F.3d at 241 (internal quotation marks omitted). To survive a motion to dismiss, the petition need only "state[ ] enough facts to state a claim to relief that is plausible on its face." Id. at 241-42 (internal quotation marks omitted).

We review a district court's grant of a motion to dismiss de novo, and may affirm "on any ground which finds support in the record, regardless of the ground upon which the trial court relied." McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000) (internal quotation marks omitted). We must assume all facts alleged in the petition to be true, affirming the dismissal only where the plaintiff fails to plead any "factual content that allows the court to draw the reasonable inference

that" he is entitled to relief. <u>Starr v. Sony BMG Music Entm't</u>, 592 F.3d 314, 321

(2d Cir. 2010) (internal quotation marks omitted).

II.  <u>Petitioners' Standing to Assert a Claim under § 853(n)(2)</u>

To establish standing to challenge an order of forfeiture under § 853(n), a

petitioner must demonstrate that he has a "legal interest in [the forfeited]

property." <u>Ribadeneira</u>, 105 F.3d at 835; <u>see</u> <u>also</u> 21 U.S.C. § 853(n)(2). The extent

of a petitioner's interest in the forfeited property is determined in accordance

with state law. <u>Willis</u>, 652 F.3d at 242. Where the petitioner has no valid interest

in the property under state law, "the inquiry ends, and the claim fails for lack of

standing." <u>Timley</u>, 507 F.3d at 1130.

The parties do not dispute that USW had a valid legal interest in its four

accounts at JP Morgan Chase. Because USW assigned its entire interest in those

funds to D&B, petitioners may thus assert a claim to those funds under § 853(n)

so long as they can show that D&B's Assignment from USW was valid under

New York law. <u>See</u> <u>United States v. Three Hundred Sixty Four Thousand Nine</u>

<u>Hundred Sixty Dollars ($364,960.00) in U.S. Currency</u>, 661 F.2d 319, 326 (5th Cir.

1981) ("Where, as here, the party challenging forfeiture is not the person in

possession of the property at the time it was seized but instead purports to be an

20

assignee of that person, the . . . claimant must show that the assignment was valid . . . ."), superseded on other grounds by The Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202. If, by contrast, the August 11, 2011 Assignment is void as a fraudulent conveyance under New York law, D&B has no cognizable interest in the funds and petitioners have no standing to seek an ancillary hearing. See United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal., 385 F.3d 1187, 1192-93 (9th Cir. 2004) (holding that undisputed evidence that claimants' interest in property was based on fraudulent conveyance left district court with "no alternative other than to find that [claimants] lacked . . . standing to contest the forfeiture").

Under the New York Debtor and Creditor Law, "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors . . . if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. Debt. & Cred. Law § 273.[2] As the statutory language implies, a fraudulent conveyance under § 273

---

[2] In its motion to dismiss, the government does not specify which provision of the New York Debtor and Creditor Law it invokes to challenge the Assignment, citing only a Bankruptcy Court case that itself cites N.Y. Debt. & Cred. Law §§ 273, 274, and 275. We construe its motion as relying on N.Y. Debt. & Cred. Law § 273, which best fits both the government's arguments for dismissal and the facts of the case.

21

"is not void per se" in all its applications. Eberhard v. Marcu, 530 F.3d 122, 129

(2d Cir. 2008).[3] Rather, as a transaction fraudulent only "as to creditors of the

transferor," it is merely "voidable by creditors of the transferor." Id. In order to

contest the validity of a transfer under § 273, it is thus "well settled" under New

York law that the challenger "must be a creditor." Id.; see also Drenis v.

Haligiannis, 452 F. Supp. 2d 418, 428 (S.D.N.Y. 2006) ("In order to bring a cause of

action for fraudulent conveyance, the plaintiff must be a creditor of the transferor

of the alleged fraudulent conveyance.").

The government insists that petitioners have no standing to assert a claim

to the contested funds under § 853(n)(2) because USW's assignment of the funds

to D&B, the sole source of petitioners' interest in the property, was a fraudulent

conveyance. Petitioners counter that the governments lacks standing to

challenge the validity of the Assignment because it is not a "creditor" of USW

under New York law. We find that the government qualifies as a "creditor" for

_____

[3] While Eberhard involves N.Y. Debt. & Cred. Law § 276, governing conveyances made "with intent to defraud," see id., the relevant language invoking a transferor's "creditors" is substantially the same in both provisions. Compare N.Y. Debt. & Cred. Law § 276, with id. § 273.

the purposes of § 273,[4] but conclude that, on the facts of the Petition, we must

accept the Assignment as a valid conveyance at this stage.

A.  Government's Status as "Creditor" of USW

The New York Debtor and Creditor Law defines a "creditor" as "a person

having any claim, whether matured or unmatured, liquidated or unliquidated,

absolute, fixed or contingent," against the transferor.  N.Y. Debt. & Cred. Law

§ 270.  This definition has been characterized as a "broad" one.  Shelly v. Doe, 671

N.Y.S.2d 803, 805 (3d Dep't 1998); Drenis, 452 F. Supp. 2d at 428.  It includes,

---

[4] In dismissing petitioners' challenge to the government's standing, the district court relied primarily on § 853(n)(5), which authorizes the "United States . . . [to] present evidence and witnesses in rebuttal" of a petitioner's claims. See 21 U.S.C. § 853(n)(5).  The court reasoned that this provision clearly anticipates that the government will have standing to contest the validity of a petitioner's legal interest in the property, including through allegations of a fraudulent transfer.

While we do not disagree with the district court's conclusion, its reasoning confuses the issue of the government's standing to challenge the petitioner's claims under § 853(n) with the government's standing to invalidate fraudulent transfers under N.Y. Debt. & Cred. Law § 273.  Petitioners do not question that the government has standing to dispute petitioners' third-party claims at the ancillary hearing, including by challenging the validity of the Assignment as a fraudulent conveyance.  What they dispute is whether, under New York law, the government is one of the limited parties against whom a fraudulent conveyance is considered "invalid" to begin with, such that the government's allegations of fraudulence can undermine petitioners' claims to a legal interest in the property under § 853(n)(2).

23

among other things, "one who has a right to maintain a tort action but has not recovered judgment at the time of the transfer."  Drenis, 452 F. Supp. 2d at 428; see also Shelly, 671 N.Y.S.2d at 805.  New York courts have clarified that, in such cases, "the relationship of debtor and creditor arises the moment the cause of action accrues."  Shelly, 671 N.Y.S.2d at 805.

The government's forfeiture claim constitutes a "claim" within the meaning of § 270.  We see no reason why the government's claim to property subject to forfeiture under 18 U.S.C. § 982(a)(2) is any different in this regard from that of a plaintiff in a pending tort action.  Just as a plaintiff's right to recover from a tortfeasor "arises the moment the cause of action accrues," id., the government's claim to property subject to criminal forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture," 21 U.S.C. § 853(c).  Whether the United States has received a special verdict entitling it to forfeiture of that property at the time of the transfer, much like whether the plaintiff in a tort case has yet "recovered judgment" on his cause of action, Drenis, 452 F. Supp. 2d at 428, does not change the fact that it has a claim against the account holder.  In both cases, the "relationship of debtor and creditor arises the moment"

24

the creditor's legal right to recover property from the defendant accrues. Shelly, 671 N.Y.S.2d at 805.

Petitioners essentially concede this point. Where the government challenges a fraudulent conveyance of forfeitable property owned by a defendant, they admit, "the government is by definition a creditor of the transferor" "by virtue of its forfeiture claim against the criminal defendant." The difference in this case, they argue, is that the contested funds did not belong to the criminal defendant – that is, to Dupree himself – but only to USW, an innocent third party against whom the government has no forfeiture claim.

Petitioners' argument effectively seeks to relitigate whether USW's bank accounts at JP Morgan Chase are subject to forfeiture as part of Dupree's sentence under § 982(a)(2) – a question discussed in greater detail below. For the purposes of petitioners' standing argument, it suffices to observe that the jury at Dupree's trial determined that USW's accounts were forfeitable under § 982(a)(2) as property derived from proceeds traceable to Dupree's offenses. While those assets may have rested in the hands of USW rather than those of Dupree, the fact remains that, as property subject to a forfeiture under § 982(a)(2), the assets "vest[ed] in the United States upon the commission" of Dupree's crimes. See 21

U.S.C. § 853(c). To the extent that an order of criminal forfeiture renders the government a "creditor" as to any property properly subject to that order, the government's forfeiture claim against USW's accounts under § 982(a)(2) rendered the government a "creditor" of USW at the time of the Assignment, regardless of whether USW was charged with any crimes or was a party to the criminal trial.[6]

Contrary to petitioners' claims, our holding in Eberhard v. Marcu, 530 F.3d 122 (2d Cir. 2008), does not compel a different outcome. In Eberhard, we held that a federal securities receiver appointed to conserve a defendant's estate pending a securities fraud trial "st[ood] only in the shoes" of the defendant and consequently could not invalidate any fraudulent transfers made by that defendant under New York law. Id. at 133. Drawing a weak analogy to the facts of that case, petitioners claim that the government's order of forfeiture against Dupree placed the government only "in the shoes" of Dupree himself, who cannot qualify as a creditor of USW so as to challenge USW's assignment to D&B. As discussed above, however, the government's right to forfeiture under § 982(a)(2) does not place the government "in the shoes" of the criminal

_____

[6] Petitioners do not contend, in connection with their standing argument, that the government's forfeiture order cannot validly encompass USW's property as a matter of law.

defendant. Instead, it gives the government an independent legal claim to any assets traceable to the defendant's crime, vesting such property in the government from the moment of the crime's commission. See 21 U.S.C. § 853(c). Under the terms of § 853(c), that is, the government's right to the forfeited property does not arise because the government "inherits" the defendant's interests through the forfeiture order; it arises because the government has an independent interest in that property that is *superior* to the defendant's own claims.

In this case, the government's right to forfeiture of any property derived from Dupree's criminal proceeds, including the funds in USW's accounts at JP Morgan Chase, gave the government an independent legal claim to those funds. That legal claim renders the government a "creditor" of USW with standing to challenge the Assignment as a fraudulent conveyance under New York law.

B.      Validity of Petitioners' Assignment under § 273

Section 273 of the New York Debtor and Creditor Law provides that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors . . . if the conveyance is made or the obligation is incurred without a fair consideration."

27

N.Y. Debt. & Cred. Law § 273.  A debtor's conveyance is thus "deemed constructively fraudulent" under § 273 only if two separate elements are satisfied: first, "it is made without 'fair consideration,'" and second, "the transferor is insolvent or will be rendered insolvent by the transfer in question." In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005).

A debtor is considered insolvent when the "present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."  N.Y. Debt. & Cred. Law § 271.  Whether the debtor received "fair consideration" entails three elements: first, "the recipient of the debtor's property must either . . . convey property in exchange or . . . discharge an antecedent debt in exchange"; second, "such exchange must be a fair equivalent of the property received"; and third, "such exchange must be in good faith."  Sharp, 403 F.3d at 53 (internal quotation marks omitted).  While transfers "made to benefit third parties" are generally "not made for a fair consideration," Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979, 991 (2d Cir. 1981) (internal quotation marks omitted), fair consideration may be deemed to exist "where the debtor's discharge of a third person's debt also discharges his own debt to that third person," id. at 992; see

28

also HBE Leasing Corp. v. Frank, 48 F.3d 623, 638 (2d Cir. 1995) (applying Rubin to the New York debtor laws).  Even a transfer satisfying an antecedent debt to a third party, however, is not made for fair consideration where that third party is "an officer, director, or major shareholder of the transferor."  Sharp, 403 F.3d at 54 (internal quotation marks omitted).

The government argues that USW's assignment to D&B was a fraudulent conveyance under § 273 because USW was insolvent at the time of transfer and failed to receive fair consideration.  First, the government claims that certain statements made by the district court in the fall of 2011 demonstrate that USW was effectively defunct at the time of the Assignment.  Second, it claims that petitioners failed to establish that USW had any pre-existing obligation to pay Watts's legal fees, and that repayment of USW's alleged antecedent debt to Watts, a corporate officer, cannot constitute fair consideration under New York law.

Without reaching the merits of whether USW's payment of Watts's legal fees may constitute "fair consideration," we conclude that, at this stage of the proceedings, the record is simply too bare to support the government's claims that USW was insolvent so as to render its Assignment fraudulent under § 273.

29

The government's allegation that USW was insolvent at the time of the Assignment relies entirely on two statements made by the district court during its September 13, 2011 hearing regarding release of USW's contested funds, in which the court interpreted the parties' prior representations to suggest that USW was "defunct" and "not operational." Assuming that the transcript of this hearing is a record of which we may take judicial notice, see Hong Mai Sa v. Doe, 406 F.3d 155, 158 (2d Cir. 2005) (noting that we "can take judicial notice of this Court's files as well as those of the district court"), the district court's cursory impressions of USW's operational status – not a matter litigated by the parties at the hearing – hardly provides compelling evidence, let alone a factual finding, that USW was insolvent at the time of the Assignment. Indeed, the district court's characterization was immediately disputed by Watts's attorney, who insisted that USW "hasn't been shut down" and "could function."

It is true that, in interpreting § 273, New York courts have stated that "the element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on the transferee." United States v. Alfano, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999); see, e.g., In re Estate of Steele, 925 N.Y.S.2d 250, 253-54 (3d Dep't 2011). But see Am.

Inv. Bank, N.A. v. Marine Midland Bank, N.A., 595 N.Y.S.2d 537, 538 (2d Dep't 1993) ("The burden of proving both insolvency and the lack of fair consideration is upon the party challenging the conveyance . . . ."); Murin v. Estate of Schwalen, 819 N.Y.S.2d 341, 343 (3d Dep't 2006). Even assuming that generally to be the case, we decline to give that presumption dispositive weight at this stage in the proceedings, in evaluating a motion to dismiss. Because, quite understandably, the Petition contains no allegations defending the solvency of USW in anticipation of the government's challenge, petitioners have received no opportunity to rebut any adverse presumptions that may arise even assuming, *arguendo*, that USW's assignment lacked fair consideration. See 21 U.S.C. § 853(n)(3) (third party's petition need only set forth "the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, . . . and the relief sought").

In reviewing a motion to dismiss, we must accept all facts alleged by the petitioners as true, and may dismiss the petition only if those allegations fail to state a "plausible" claim for relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Because the facts alleged in the Petition, prior to petitioners' receiving

31

the benefit of discovery or even notice of the government's legal challenge, do not suggest that it is implausible that USW was in fact solvent at the time of the Assignment, we must assume that the Agreement was, as alleged in the Petition, a valid conveyance.

Having determined that petitioners have plausibly alleged a legal interest in the contested funds so as to establish standing under § 853(n)(2), we thus proceed to examine whether petitioners have stated a plausible claim to relief under § 853(n)(6).

III.     Superior Interest under § 853(n)(6)(A)

To establish a claim to property subject to forfeiture under § 853(n)(6)(A), a petitioner must demonstrate that he "has a legal right, title, or interest in the property . . . [that] was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant *at the time of the commission of the acts* which gave rise to the forfeiture of the property."  21 U.S.C. § 853(n)(6)(A) (emphasis added).  The requirement that the petitioner's interest be evaluated "at the time of the commission of the acts" governs our analyses of both when the property became "vested in the petitioner" and when the petitioner's interest became "superior to any . . . interest of the defendant."  See

United States v. Hooper, 229 F.3d 818, 821 (9th Cir. 2000) (internal quotation marks omitted).

Subsection 853(n)(6)(A) works hand in hand with the "relation-back" doctrine embodied in § 853(c), which provides that all property subject to forfeiture based on a criminal offense "vests in the United States upon the commission of the [offense]." See 21 U.S.C. § 853(c). Because forfeitable property vests in the government immediately upon the commission of a criminal act, a third party may prevail under § 853(n)(6)(A) only by establishing that he "had a legal interest in the forfeited property *before* the underlying crime was committed" – that is, "before the government's interest vested." Timley, 507 F.3d at 1130 (emphasis added). Where, by contrast, the petitioner obtains his interest in the property *after* the commission of the crime giving rise to forfeiture, he may defend his right to the property only under § 853(n)(6)(B), by establishing that he acquired the interest as a bona fide purchaser for value without cause to believe that the property was forfeitable. See 21 U.S.C. § 853(c) ("Any such property that is subsequently transferred to a person other than the defendant . . . shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) . . . that he is a bona fide purchaser for

33

value . . . ."); Hooper, 229 F.3d at 822 ("[I]f property is 'subsequently transferred,' . . . the transferee is protected only as a bona fide purchaser.").

For this reason, courts have recognized that a petitioner is unlikely ever to prevail at an ancillary hearing under § 853(n)(6)(A) where the forfeited property consists of "proceeds" derived from or traceable to a criminal offense. Because, by definition, the "proceeds of an offense do not exist before the offense is committed," and because "the government's interest under the relation-back doctrine immediately vests" upon the commission of that offense, any proceeds that ensue from the criminal act belong to the government from the moment that they come into existence. Timley, 507 F.3d at 1130; see also United States v. Watkins, 320 F.3d 1279, 1282 (11th Cir. 2003); Hooper, 229 F.3d at 821-22. Accordingly, § 853(n)(6)(A) is better suited to defending a third party's right to the "instrumentalities" of a crime – property used by a defendant to facilitate his criminal acts, but that pre-exists those acts themselves – than to proceeds that necessarily arise only after or upon the commission of the crime. Hooper, 229 F.3d at 822 (noting that, since "[p]roceeds of crime . . . do not precede the crime," petitioner cannot defend a claim to "proceeds" under § 853(n)(6)(A)).

In this case, the jury found that USW's funds at JP Morgan Chase were subject to forfeiture under § 982(a)(2) as "property constituting, or derived from, proceeds [Dupree] obtained directly or indirectly, as the result of" his fraudulent scheme. See 18 U.S.C. § 982(a)(2). There is consequently no question – nor do petitioners try to dispute – that the contested funds came into USW's possession and were deposited in USW's accounts only after the start of Dupree's conspiracy in 2007.[7] Because all proceeds of Dupree's criminal conspiracy automatically vested in the government at that time, see Timley, 507 F.3d at 1131; United States v. McClung, 6 F. Supp. 2d 548, 552 (W.D. Va. 1998), and because the contested funds only came into USW's ownership after that date, neither USW nor, by virtue of the Assignment, D&B may colorably assert that its interest in the

---

[7] The district court presumed that petitioners' interest in the funds originated on the date of D&B's receipt of the funds on August 11, 2011. Because petitioners' interest in the contested funds depends on the assignment to them of *USW*'s legal interest, however, the appropriate date to consider is when USW itself acquired title to those funds. See In re Stralem, 758 N.Y.S.2d 345, 347 (2d Dep't 2003) ("When a valid assignment is made, the assignee steps into the assignor's shoes and acquires whatever rights the latter had.") (citing Furlong v. Shalala, 156 F.3d 384, 392 (2d Cir. 1998)); see also United States v. Currency Totalling $48,318.08, 609 F.2d 210, 214 (5th Cir. 1980) ("The right, title, and interest conveyed by the assignment are twofold: first, an ownership interest in currency previously seized by, currently possessed by, and potentially forfeitable to the United States; and second, a right to assert those defenses to forfeiture that were available to [the transferor] at the time of the assignment.").

property "vested . . . or was superior to any right, title, or interest of the defendant *at the time of the commission of the acts* which gave rise to the forfeiture." 21 U.S.C. § 853(n)(6)(A) (emphasis added).[8]

Petitioners insist that their claim to the contested funds falls under the exception to the relation-back doctrine recognized in Willis Management (Vermont), Ltd. v. United States, 652 F.3d 236 (2d Cir. 2011). In Willis, we confirmed that a constructive trust "qualifies as a 'legal right, title, or interest in the property' that 'may be a superior interest' to a defendant's interest for the purposes of . . . § 853(n)(6)(A)." Id. at 242; see also United States v. Schwimmer, 968 F.2d 1570, 1582 (2d Cir. 1992). The defendant in that case was convicted of embezzling funds from his employer, which he subsequently used to build one home and, through a mortgage on that home, obtain a line of credit to purchase a

---

[8] It makes no difference, in this regard, whether the funds in USW's bank accounts were ever owned by Dupree himself or were acquired directly by USW. Like petitioners' attack on the government's standing to challenge the Assignment, any argument based on this distinction simply relitigates the question of whether the proceeds were, as the jury concluded, subject to forfeiture under 18 U.S.C. § 982(a)(2). So long as the funds were subject to forfeiture and, consequently, vested in the government from the moment of the crime's commission under § 853(c), the government had a superior interest in those funds the moment they came into existence, regardless of who owned the bank account into which they were deposited.

second property.  See Willis, 652 F.3d at 238-39.  Although the defendant's employer could certainly claim no "vested" or "superior" interest in those properties at the time of the defendant's offense, we held that the employer might still be entitled to both homes under § 853(n)(6)(A) if the defendant's embezzlement of the employer's funds gave rise to a constructive trust in favor of the employer.  See id. at 245.

Willis provides no support for the petitioners' claims.  To begin with, the exception recognized in Willis hinged on the fact that, under Vermont law, the defendant's embezzlement may have entitled his employer to a constructive trust over all properties acquired through the stolen funds.  See id. at 245-46.  Although New York law too recognizes constructive trusts, petitioners do not even attempt to argue that they, or USW, are entitled to a constructive trust under the facts of this case.  See Counihan v. Allstate Ins. Co., 194 F.3d 357, 362 (2d Cir. 1999) (a constructive trust under New York law requires, at the least, "a showing that property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment").

Petitioners invite us to expand the exception recognized in <u>Willis</u> beyond the context of constructive trusts. They argue that this case is materially indistinguishable from <u>Willis</u> because, as in <u>Willis</u>, the government seeks forfeiture of property that from the moment of its existence belonged to a third party rather than to Dupree. We reject that argument.

This case involves none of the critical equitable considerations that give rise to constructive trusts. Entitling its beneficiary to any property acquired by the use of funds stolen from him, a constructive trust arises "when, in the eyes of equity, a plaintiff is the true owner of . . . [the] property" at issue due to his right to the underlying assets from which it derives. <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 103 (2d Cir. 2005) (internal quotation marks omitted). In these circumstances, the trust "confers on the true owner of the property an equitable interest in the property superior to" that of anyone who claims a later interest, <u>In re Koreag, Controle et Revision S.A.</u>, 961 F.2d 341, 352 (2d Cir. 1992) (internal quotation marks omitted) – including, in effect, the government under § 853(c). That equitable rationale does not apply where, far from representing the fruits of the third party's own lawful assets, the property subject to forfeiture would never

38

have vested in the third party in the first instance absent the defendant's criminal activity.

Put simply, recognizing a constructive trust in Willis would benefit the *victim* of the crime. Because Vermont state law provided that title to stolen property and its traceable proceeds remained in the hands of the victim, the victim's claim to that property could have been prior to any forfeiture to the government. Here, in contrast, petitioners seek to assert priority, not on behalf of any victim of Dupree's fraud, but rather on behalf of the *beneficiary* of his crimes.[9] Under such circumstances, the rationale of Willis is not merely distinguishable – it cuts entirely the other way. The circumstances here present a classic case for

_____

[9] Even where the elements of a traditional constructive trust are involved, this Court has cautioned that any exception to the relation-back doctrine should be a narrow one. On the facts of Willis itself, we explicitly "d[id] not foreclose the possibility that a district court would have the discretion to deny a constructive trust where justice would be better served by allowing some other manner of compensating victims" under the forfeiture statute. 652 F.3d at 245-46. As we observed, § 853 provides at least one additional avenue of redress for third parties beyond an ancillary hearing under § 853(n): § 853(i), which authorizes the Attorney General to "grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice." 21 U.S.C. § 853(i)(1). The Attorney General's discretion under § 853(i) counsels against crafting any broad judicial exceptions to § 853(n)(6)(A), as it may "provide[ ] a legal remedy which obviates the need for application of an equitable remedy." Ribadeneira, 105 F.3d at 837 n.5.

application of the statutory command that the proceeds of a defendant's crime are forfeited to the government from the moment of their creation.[10]

In light of our established reluctance to broaden the reach of § 853(n)(6)(A), the district court properly held that petitioners were not entitled to any exception to the relation-back doctrine, under our precedent in <u>Willis</u> or otherwise. Accordingly, the undisputed status of the contested funds as "proceeds" of Dupree's criminal offense, which necessarily came into existence following the commission of that offense, precludes petitioners from establishing a superior interest in the funds under § 853(n)(6)(A).

IV.   <u>Bona Fide Purchaser under § 853(n)(6)(B)</u>

To establish a claim to forfeited property under § 853(n)(6)(B), a petitioner must demonstrate that he is "a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture."  21 U.S.C. § 853(n)(6)(B).

---

[10] Petitioners argue that we should treat USW as an innocent third party, since it was not convicted of, or even charged with, any crimes.  Even assuming *arguendo* that this characterization is apt in the case of a corporation that receives the proceeds of a crime committed in the course of business by a corporate officer who exercises unilateral control over its finances, our conclusion is unaffected.  It suffices for us that USW was the beneficiary of the proceeds of the crime.

While § 853(n)(6)(A) works hand in hand with the relation-back doctrine, § 853(n)(6)(B) provides a narrow exception to that principle, allowing a limited category of petitioners who "acquired an interest in the forfeited property *after* the government's interest vested" to prevail at an ancillary hearing.  Timley, 507 F.3d at 1130 (emphasis added).

In this case, there is no dispute that D&B, as Watts's defense counsel, was aware that the government's indictment against Watts and Dupree included a forfeiture allegation seeking "forfeiture . . . of any property constituting or derived from proceeds obtained directly or indirectly as a result of [their] offenses."  It was also aware, well before the August 11, 2011 Assignment, that the government had filed a Bill of Particulars identifying USW's four bank accounts at JP Morgan Chase as among the properties it sought to have forfeited.

Based on these facts alone, it would be difficult to argue that D&B was "reasonably without cause" to believe that the contested funds were subject to forfeiture at the time of the Assignment.  As the Supreme Court has observed, the government's identification in a criminal indictment of the property it seeks to have forfeited, which reflects a grand jury's determination that there is probable cause to believe the property is forfeitable, generally suffices to alert a

41

defendant's attorney that the property may be subject to forfeiture following the trial. Because, in such circumstances, "the only way a lawyer could be a beneficiary of § 853(n)(6)(B) would be to fail to read the indictment of his client," Caplin & Drysdale, 491 U.S. at 632 n.10, "it is highly doubtful that one who defends a client in a criminal case that results in forfeiture could prove that he was without cause to believe that the property was subject to forfeiture," United States v. Monsanto, 491 U.S. 600, 604 n.3 (1989) (internal quotation marks omitted).

Notably, however, the Supreme Court's decision in neither Caplin & Drysdale nor Monsanto presumed that a criminal defendant is entitled to a pre-trial hearing to determine whether the government had probable cause to continue restraining his property. See Caplin & Drysdale, 491 U.S. at 620-21; Monsanto, 491 U.S. at 603-04.[11] The Court in those cases consequently did not consider whether, where the district court conducts a Monsanto hearing, the government's failure to establish probable cause to restrain the defendant's

---

[11] In Caplin & Drysdale, the defendant had received no pre-trial hearing. 491 U.S. at 620-21. In Monsanto, while noting that the defendant had in fact received a hearing before the district court, the Court explicitly declined to "consider . . . whether the Due Process Clause requires [such] a hearing before a pretrial restraining order can be imposed." 491 U.S. at 615 n.10.

property may reasonably affect an attorney's analysis. Seizing on that

distinction, petitioners insist that the district court's July 27, 2011 ruling, holding

that the government failed to establish probable cause to restrain $633,499.24 of

USW's funds as proceeds of the criminal offense, obviated the reasonable cause

that D&B would otherwise have had to believe that at least that portion of the

funds was subject to forfeiture under § 982(a)(2).

In United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991), the very case

that established a defendant's right to an adversarial hearing on the pretrial

restraint of forfeitable assets in this Circuit, we expressly anticipated that the

government's failure to demonstrate probable cause at such a hearing would

affect an attorney's appraisal of whether his client's property was subject to

forfeiture. The Monsanto case followed a somewhat tortuous appellate path,

which began when a panel of this Court held that due process required the

government to prove a "likelihood" of establishing the forfeitability of a

defendant's property at an adversarial hearing in order to continue restraining

that property pretrial. See United States v. Monsanto, 836 F.2d 74, 83-84 (2d Cir.

1987), on reh'g, 852 F.2d 1400 (2d Cir. 1988), rev'd, 491 U.S. 600 (1989), vacated,

924 F.2d 1186 (2d Cir. 1991). Where the government failed to carry that burden,

the panel clarified that any liberated funds spent by the defendant on legitimate attorneys' fees would remain exempt from forfeiture following the trial. See id. at 84.

The Court sitting *en banc* rejected the panel's holding. See United States v. Monsanto, 852 F.2d 1400 (2d Cir. 1988), rev'd, 491 U.S. 600 (1989). While differing widely in their reasoning, a majority of the Court agreed that, regardless of an adversarial hearing, any restraining orders against the defendant's property had to be modified to permit the defendant to use the restrained assets to pay his attorneys' fees. Id. at 1402. The Supreme Court in turn reversed that ruling, holding that neither the federal forfeiture statute nor the Constitution required an exception to the government's right to restrain property for any assets needed to pay a defendant's legitimate attorneys' fees. Monsanto, 491 U.S. at 602, 616. Without deciding whether due process demanded an adversarial hearing to contest the validity of pretrial restraint, the Supreme Court concluded that such restraints raised no constitutional concerns where, as in that case, the defendant's assets were "restrained . . . based on a finding of probable cause to believe that the assets are forfeitable." Id. at 615.

On remand, this Court, still sitting *en banc*, confined itself primarily to the issue of whether due process required an adversarial hearing to restrain assets that a defendant might otherwise use for legitimate defense fees.[12] See Monsanto, 924 F.2d at 1188. Answering that question in the affirmative, we resurrected the pretrial hearing first espoused by the original panel, though we limited the government's burden of proving the forfeitability of the defendant's assets to establishing "probable cause," id., and declined to hold that any funds spent on legitimate attorneys' fees would remain exempt from post-trial forfeiture, id. at 1203. In weighing the due process interests involved, a majority of this Court rejected the dissent's objection that a criminal defendant's interest in this type of pretrial hearing was only "slight," because a defense lawyer's understanding that his fees could ultimately be seized by the government meant that the outcome of a Monsanto hearing would presumably "have *no* effect" on the attorney's

---

[12] We also considered whether a district court could reconsider the grand jury's determinations of probable cause at such a hearing, concluding that a court could do so. Monsanto, 924 F.2d at 1188. The parties contested a district court's prerogative to reconsider the grand jury's probable cause determinations only as to the defendant's underlying guilt, not as to the forfeitability of the assets, which all parties conceded fell within the court's jurisdiction at such a hearing. See id. at 1196. To the extent that Monsanto held that a defendant may challenge the existence of probable cause as to his guilt, it has since been abrogated. See Kaley v. United States, 134 S. Ct. 1090, 1095 & n.4, 1105 (2014).

45

willingness to take the case. Id. at 1194; see also id. at 1208 (Cardamone, J., dissenting). Because a Monsanto hearing entitled a defendant to "any relief from a pretrial restraint of allegedly forfeitable assets" only if it revealed a "lack of probable cause . . . as to . . . forfeitability of [those] restrained assets," we concluded that "it [wa]s hardly evident that counsel would be unavailable where such a showing could successfully be made," regardless of the lack of guarantees regarding post-trial forfeiture. Id. at 1194 (majority opinion).

Our opinion in Monsanto suggests that the outcome of a pretrial hearing on the forfeitability of the defendant's funds may affect a defense attorney's entitlement to relief under § 853(n)(6)(B). It presumes, in essence, that a defense attorney could – and would – rely on the outcome of a Monsanto hearing to appraise whether his client's contested funds would ultimately be ordered forfeited or would remain available to pay his fees. As the Court in Monsanto recognized, a successful outcome for the defendant – that is, a judicial determination that probable cause to find the property forfeitable was lacking – could suggest to the attorney that the government would not be able to establish forfeiture at trial. That recognition would be meaningless if we were to suggest that the attorney's conclusion could not, in at least some cases, be considered

46

"reasonable." We have previously emphasized that the government's burden of demonstrating probable cause to believe that a defendant's assets are forfeitable at a <u>Monsanto</u> hearing is "relatively modest." <u>United States v. Bonventre</u>, 720 F.3d 126, 131 (2d Cir. 2013). Where the government fails to carry that light burden, an attorney might, under the right circumstances, be justified in concluding that the government's forfeiture claims against his client are devoid of legal merit.

In rejecting petitioners' argument, the district court noted that its July 27, 2011 order finding no probable cause to continue restraining USW's contested funds before the trial did not *preclude* the government from either seeking or even obtaining an order of forfeiture against that property at trial. <u>Dupree</u>, 919 F. Supp. 2d at 271-72. That is undoubtedly true. But the relevant question is not whether the outcome of a <u>Monsanto</u> hearing conclusively "foreclose[s] the ultimate forfeitability" of a defendant's property. <u>Id</u>. at 272. The question is whether, following a district court's neutral appraisal of the government's evidence and its determination that the government has failed to meet its "modest" burden of establishing probable cause to restrain the funds, a defense

attorney may *reasonably* be without cause to *believe* that the challenged property is "subject to forfeiture."

The problem with the district court's reasoning, and that urged by the government, is that it effectively conflates whether an individual reasonably has cause to believe that property is "subject to forfeiture" with whether the government intends to pursue a forfeiture claim against that property. Yet whether a defendant's property is "subject to forfeiture" under federal law is not solely a matter of the government's intentions regarding that property. It is a legal conclusion that must be proven, on the merits, to a court. The mere *assertion* by the government that it believes the property forfeitable, stripped of the reliability provided by the grand jury's probable cause determination by the court's contrary conclusion after both sides have been heard, cannot be conclusive of the attorney's reason to believe the property is forfeitable.

When the government seeks to obtain an order of forfeiture, "Federal Rule of Criminal Procedure 32.2(b)(1) . . . requires *the sentencing court* to determine what property is subject to forfeiture under the applicable statute." United States v. Capoccia, 503 F.3d 103, 109 (2d Cir. 2007) (internal quotation marks omitted) (emphasis added). That standard means that, among other things, "*the court*

48

must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A) (emphasis added). At various points in the proceedings, the government bears the burden of proving this legal conclusion to varying degrees of certainty: as a matter of probable cause at a post-indictment hearing, see Monsanto, 924 F.2d at 1195, or by a preponderance of the evidence at a bench trial or before a jury, see United States v. Gaskin, 364 F.3d 438, 461 (2d Cir. 2004). Only if the government meets the relevant legal threshold, however, may the property in question be considered "subject to forfeiture" in any legal sense. Prior to that, while the government has simply announced its intent to *seek* forfeiture through the indictment, the property is seen merely as "potentially forfeitable," Caplin & Drysdale, 491 U.S. at 622, or "potentially subject to forfeiture," id. at 650-51 (Blackmun, J., dissenting); United States v. Kirschenbaum, 156 F.3d 784, 795 (7th Cir. 1998).[13]

---

[13] For essentially this same reason, petitioners' claim under § 853(n)(6)(B) is not foreclosed by the fact that, under the terms of the Assignment, USW warranted the transferred funds as free from all liens and encumbrances "except to the extent that the United States seeks forfeiture." That USW did not warrant the funds against the government's right to "seek[ ] forfeiture" does not mean that D&B could not reasonably believe that the funds were not, as a matter of law, "subject to forfeiture," even if the government sought to obtain them.

Indeed, relying solely on the government's decision to seek forfeiture to conclude that a defendant's property is likely "subject to forfeiture" contradicts the very purpose of holding a Monsanto hearing. As we emphasized in our final opinion in Monsanto, because an "indictment . . . emerges from a nonadversarial process," restraining a defendant's property based purely on that document carries "a substantial risk of an erroneous deprivation of a defendant's significant property interest." 924 F.2d at 1195. Precisely due to this weakness, we decided that some "additional . . . safeguard" to appraise the likely forfeitability of property was in order. Id. The core purpose of a Monsanto hearing, in short, is to "provide a procedural check against the government's discretion to limit . . . defendants' choice of counsel simply by obtaining a forfeiture charge in the indictment," Monsanto, 836 F.2d at 84 – constraining the government's "troubling" ability "to exercise an intolerable degree of power over any private attorney who takes on the task of representing a defendant in a forfeiture case," Caplin & Drysdale, 491 U.S. at 650 (1989) (Blackmun, J., dissenting). If nothing else, this Circuit's requirement of a Monsanto hearing prior to continuing the pretrial restraint of a defendant's property must mean that the defendant and his counsel can accord greater weight to the district court's determinations of

50

probable cause following that hearing than to the government's decision to seek forfeiture to begin with.

In light of the due process concerns underlying our adoption of the <u>Monsanto</u> hearing as a procedural check against the government's forfeiture allegations, and our recognition of the government's relatively light burden of proof at such a hearing, we conclude that the government's failure to establish probable cause at a <u>Monsanto</u> hearing may, under some circumstances, leave a defense attorney "reasonably without cause to believe that [his client's] property was subject to forfeiture" for the purposes of § 853(n)(6)(B). Whether that belief is truly reasonable in any given case will, of course, depend on the particular facts proven. Where, for example, an attorney has reasonable grounds to believe that his client acquired the contested property through innocent means and the government fails to adduce any meaningful evidence to the contrary, a <u>Monsanto</u> hearing may leave the attorney "reasonably without cause" to believe that the government's forfeiture claims have any valid legal foundation, even if the government ultimately establishes forfeitability at trial. Where, by contrast, an attorney has reason to know of the criminal origins of the property, but the government fails to produce sufficient evidence of that criminal connection at the

51

pretrial hearing, an attorney may not rely on that fact to shirk off his reasonable notice that the property was ultimately "subject to forfeiture."

In this particular case, whether the <u>Monsanto</u> hearing left D&B reasonably without cause to believe that the $633,499.24 was nevertheless "subject to forfeiture" depends on a variety of circumstances: from where D&B believed those funds were derived, how it believed they came into USW's possession, whether it received that information solely from Watts and his co-defendants or from some neutral parties, and what, if anything, it reasonably should have inferred from discovery materials provided by the government, among other questions. At this stage in the proceedings, based purely on the facts alleged in the Petition and the incorporated documents, the record neither clarifies the answers to those questions nor precludes a fact finder from ultimately resolving those questions in D&B's favor. Because petitioners have plausibly alleged that, after the district court's decision vacating the restraint on the contested funds for lack of probable cause, they were reasonably without cause to believe that those funds were subject to forfeiture, petitioners have pleaded sufficient facts to survive a motion to dismiss on their claim that D&B was a bona fide purchaser

entitled to relief under § 853(n)(6)(B).[14]

V.     Right to Forfeiture of USW's Assets

Next, petitioners argue that the funds in USW's bank accounts at JP

Morgan Chase are not subject to forfeiture under 18 U.S.C. § 982(a)(2) because

criminal forfeiture is an *in personam* proceeding that extends only to property

owned by the criminal defendant.  Because, according to petitioners, the

contested funds were deposited directly into USW's accounts and never passed

through Dupree's hands, they could not lawfully be included in the district

court's forfeiture order.  Petitioners suggest that this principle both supports their

reasonable lack of cause to believe that the contested funds were "subject to

forfeiture" under § 853(n)(6)(B) and precludes the court from ordering USW's

funds forfeited in the first place.

Petitioners' argument runs contrary to this Circuit's understanding of 18

U.S.C. § 982(a).  The forfeiture provision that governs this case, § 982(a)(2),

provides that a court sentencing a person convicted of violating or conspiring to

[14] We of course express no view on whether petitioners will be able to sustain
their allegations at a hearing, as the issue before us is only whether their petition
can be dismissed as a matter of law.  Similarly, since the parties do not contest
before us whether D&B was a purchaser *for value*, we express no view on that
issue.

53

violate 18 U.S.C. §§ 1341, 1343, or 1344 "shall order that the person forfeit to the United States *any property* constituting, or *derived from*, proceeds the person obtained directly or indirectly, as the result of such violation."  18 U.S.C. § 982(a)(2) (emphases added).  In De Almeida v. United States, 459 F.3d 377 (2d Cir. 2006), this Court confronted a similar challenge to a parallel provision of the statute, § 982(a)(1), which authorizes a court to "order that the [defendant] forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."  18 U.S.C. § 982(a)(1); see also De Almeida, 459 F.3d at 381.  We held that this statutory language "makes sufficiently clear that criminal forfeiture is not a measure restricted to property owned by the criminal defendant; it reaches *any* property that is 'involved' in the offense."  De Almeida, 459 F.3d at  381 (emphasis in original).  In light of the judicial presumption toward interpreting similar statutory language consistently across neighboring subsections of a statute, see, e.g., Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 489 (1985), De Almeida counsels us to read § 982(a)(2) as authorizing forfeiture of *any* property that is "derived" from proceeds obtained through a defendant's offense, whether or not that property was ever owned by the criminal defendant.  At the very least, De Almeida precludes petitioners from

54

relying on the ostensibly *in personam* nature of criminal forfeiture to establish the reasonableness of their belief that USW's funds were not subject to forfeiture under § 853(n)(6)(B). As a precedential opinion interpreting a neighboring provision of § 982(a), De Almeida more than sufficed to alert petitioners that courts in this Circuit would likely interpret § 982(a)(2) to extend beyond the defendant's own property interests.

Petitioners insist that our more recent decision in United States v. Contorinis, 692 F.3d 136 (2d Cir. 2012), compels a different outcome in this case. In Contorinis, we held that an order of criminal forfeiture under 18 U.S.C. § 981(a)(1)(C), a provision reaching "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to [the] violation,"[15] could not encompass proceeds that were never personally acquired or controlled by the defendant. Id. at 147-48. Petitioners read this holding as reaffirming an *in personam* theory of criminal forfeiture, limiting the government's reach to property that was once in the defendant's own possession.

---

[15] While 18 U.S.C. § 981(a)(1)(C) is technically a civil forfeiture provision, it has been integrated into criminal forfeiture law by 28 U.S.C. § 2461(c). Contorinis, 692 F.3d at 145 n.2.

Even assuming that <u>Contorinis</u> – which involved a different forfeiture statute and hinged on a statutory definition of "proceeds" not obviously applicable to this case, <u>see</u> <u>id</u>. at 145; 18 U.S.C. § 981(a)(2) – casts doubt on our holding in <u>De Almeida</u>, petitioners' argument is not available to them as third-party claimants under § 853.  Having established a third party's right to an ancillary proceeding under § 853(n), that section explicitly provides that, "*[e]xcept as provided in subsection (n)* . . . , no party claiming an interest in property subject to forfeiture under this section may . . . commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment."  21 U.S.C. § 853(k) (emphasis added).  We have consistently interpreted § 853(k) to mean that an ancillary proceeding under § 853(n) is "the *only* avenue for a post-indictment third-party claim to forfeited property" under the criminal forfeiture statute.  <u>De Almeida</u>, 459 F.3d at 381 (emphasis in original); <u>see</u> <u>also</u> <u>DSI Associates LLC v. United States</u>, 496 F.3d 175, 183-84 (2d Cir. 2007) ("It is . . . well settled that section 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets . . . .").

As outlined above, § 853(n) provides only two means by which a third-party claimant may establish his right to forfeitable property: either by demonstrating that he possessed a "superior interest" at the time of the offense under § 853(n)(6)(A), or by demonstrating that he was a "bona fide purchaser for value" reasonably without cause to believe that the property was subject to forfeiture under § 853(n)(6)(B). See 21 U.S.C. § 853(n)(6). Beyond those two limited claims, the provision authorizes no challenges to the forfeitability of a defendant's property by interested third parties. Petitioners protest that § 853 manifests a clear concern with protecting innocent third-party property from criminal forfeiture – not least, as we noted in De Almeida, by accommodating "[t]he likelihood that some property involved in an offense will be owned by persons other than the criminal defendant . . . in [its] provision for an ancillary proceeding." 459 F.3d at 381. Yet just as there is no doubt that § 853 protects third parties by entitling them to ancillary hearings on their claims, there is also no doubt that it limits the scope of such ancillary hearings to the two grounds identified in § 853(n)(6). Any additional challenges to an order of forfeiture based on Contorinis must be raised – as was the challenge in Contorinis, see 692 F.3d at 139 – by the criminal defendant himself.

Because the criminal forfeiture statute does not authorize petitioners to challenge the scope of a forfeiture order beyond the two grounds identified in § 853(n)(6), the district court properly rejected their claim that USW's funds are not subject to forfeiture under § 982(a)(2).[16]

VI.   Judgment on the Pleadings

Finally, petitioners argue that the district court erred in failing to grant them judgment on the pleadings, insisting that the Petition establishes their entitlement to judgment as a matter of law.  Because petitioners have failed to state a claim under § 853(n)(6)(A), have no right to challenge the forfeiture order under § 982(a)(2), and have merely alleged sufficient facts to present a plausible claim to relief under § 853(n)(6)(B) that must be resolved by further proceedings, petitioners' motion was properly denied.

## CONCLUSION

For the foregoing reasons, the district court's order is AFFIRMED to the extent that it (1) denied the government's motion to dismiss petitioners' claim for

---

[16] Petitioners do not argue that § 853's limitations on a third party's right to challenge a forfeiture order raise any constitutional concerns.  Regardless, this Court addressed such a constitutional claim in DSI Associates.  That decision's determination that any constitutional challenge was not yet ripe applies equally to the facts of this case.  See 496 F.3d at 185-87.

lack of standing, (2) granted the government's motion to dismiss the Petition for failure to state a claim under § 853(n)(6)(A), (3) rejected petitioners' contention that the contested property is not subject to forfeiture under § 982(a)(2), and (4) denied petitioners' motion for judgment on the pleadings. The district court's order is VACATED to the extent that it granted the government's motion to dismiss the Petition for failure to state a claim under § 853(n)(6)(B), and the case is REMANDED to the district court for further proceedings consistent with this opinion.