17-898-cv
U.S. v. Daugerdas

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2017

(Argued: February 5, 2018          Decided: June 13, 2018)

Docket No. 17-898-cv

UNITED STATES,

*Appellee*,

— v. —

PAUL M. DAUGERDAS, ERWIN MAYER, DONNA GUERIN, DENIS FIELD, ROBERT GREISMAN, RAYMOND CRAIG BRUBAKER, DAVID PARSE, BDO USA, LLP,

*Defendants*,

ELEANOR DAUGERDAS,

*Petitioner-Appellant*.

B e f o r e :

WALKER, LYNCH, and CHIN, *Circuit Judges.*

Petitioner-appellant Eleanor Daugerdas appeals from an order of the United States District Court for the Southern District of New York (William H. Pauley III, *J.*), dismissing her petition asserting a third-party interest in certain accounts (the "Accounts") preliminarily forfeited in the underlying criminal proceedings against her husband, Paul M. Daugerdas. The parties agree that Paul initially funded the Accounts, at least in part, with money he was paid by the law firm through which he conducted his fraudulent activities, and that he gratuitously transferred ownership of the Accounts to his wife over a period of years. Eleanor contends that the law firm irreversibly commingled the income it received from Paul's fraudulent-tax-shelter clients with untainted money before it paid Paul, and accordingly the funds in the Accounts cannot easily be traced to her husband's fraud. Eleanor therefore asserts that the Accounts cannot now be taken from her to satisfy her husband's forfeiture obligations; instead, she argues, equivalent amounts must be collected from her husband's own assets in the same manner that a judgment creditor would enforce any personal money judgment.

We conclude that Eleanor's petition does not currently contain sufficient plausible allegations to sustain her position; however, at oral argument, she claimed to be able to plead additional facts, and such repleading would not necessarily be futile. Because denying Eleanor the ability to assert the argument she raises here could potentially permit the government to deprive her of her own property without due process of law, we VACATE the district court's order and REMAND the case for proceedings consistent with this opinion.

---

ANDREW C. ADAMS (Anna M. Skotko, *on the brief*), Assistant United States Attorneys, *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

JAMES R. DEVITA, Doar Rieck DeVita Kaley & Mack, New York, NY, *for Petitioner-Appellant.*

---

GERARD E. LYNCH, *Circuit Judge*:

Petitioner-appellant Eleanor Daugerdas appeals from an order of the United States District Court for the Southern District of New York (William H. Pauley III, *J.*), dismissing her petition asserting a third-party interest in certain accounts (the "Accounts") preliminarily forfeited in the underlying criminal proceedings against her husband, Paul M. Daugerdas.[1] The parties agree that Paul initially funded the Accounts, at least in part, with money he was paid by the law firm through which he conducted his fraudulent activities, and that he gratuitously transferred ownership of the Accounts to his wife over a period of years. Eleanor contends that the law firm irreversibly commingled the income it received from Paul's fraudulent-tax-shelter clients with untainted money before it paid Paul, and that the funds in the Accounts therefore cannot easily be traced to her husband's fraud. Eleanor therefore asserts that the Accounts cannot now be taken from her to satisfy her husband's forfeiture obligations; instead, she argues, equivalent amounts must be collected from her husband's own assets in the same manner as a judgment creditor would enforce any personal money judgment.

---

[1] For simplicity and to avoid confusion, we refer henceforth to Mr. and Ms. Daugerdas by their first names.

We conclude that Eleanor's petition does not currently contain sufficient plausible allegations to sustain her position; however, at oral argument, she claimed to be able to plead additional facts demonstrating that the funds in the Accounts were irreversibly commingled. Because Eleanor did not have an opportunity to participate in the criminal proceedings against her husband, we conclude that if such facts exist, denying Eleanor the ability to assert the argument she raises here could potentially permit the government to deprive her of her own property without due process of law. Accordingly, we VACATE the district court's order and REMAND the case for further proceedings consistent with this opinion.

## DISCUSSION

Eleanor's argument turns on the complex structure of criminal forfeiture proceedings. For her position to be understood, it is necessary to clarify certain aspects of forfeiture law before discussing the facts at issue in this appeal.

### I. Legal Framework of Criminal Forfeiture

The government sought forfeiture of Paul's property pursuant to 18 U.S.C. § 981(a)(1)(C) (civil forfeiture)[2] and § 982(a)(2)(A) (criminal forfeiture). Forfeiture

---

[2] Pursuant to 28 U.S.C. § 2461(c), any property that is subject to civil forfeiture as a result of a violation of federal law may also be subject to forfeiture in a federal

proceedings under those statutes are governed by 21 U.S.C. § 853 and Rule 32.2

of the Federal Rules of Criminal Procedure. *See* 18 U.S.C. § 982(b)(1); 28 U.S.C.

§ 2461(c).

Unlike civil forfeiture, which is an *in rem* action, "criminal forfeiture is an

*in personam* action in which only the defendant's interest in the property may be

forfeited." Fed. R. Crim. P. 32.2(b) advisory comm. notes (2000); *see also United*

*States v. Lester*, 85 F.3d 1409, 1413 (9th Cir. 1996) ("[A] criminal forfeiture is an *in*

*personam* judgment *against a person convicted of a crime*.") (emphasis in original).

Section 853 nevertheless incorporates into criminal forfeiture proceedings aspects

of an *in rem* proceeding against property tainted by the defendant's criminal

conduct — including, as relevant here, against the proceeds of that offense — in

order to effectuate Congress's intent that forfeiture proceedings be used "to

recover all of the [defendant's] ill-gotten gains but not to seize legitimately

acquired property." *United States v. Porcelli*, 865 F.2d 1352, 1365 (2d Cir. 1989).

Under the "relation-back" doctrine of § 853(c), the government's interest in the

proceeds of a fraud vests as soon as those proceeds come into existence, and is

therefore superior to that of any subsequent third-party recipient of those funds

---

criminal proceeding. *See United States v. Capoccia*, 503 F.3d 103, 115 (2d Cir. 2007).

(unless the third party is a bona fide purchaser for value).[3] *See United States v. Kramer*, No. 1:06-cr-200, 2006 WL 3545026, at \*4 (E.D.N.Y. Dec. 8, 2006) (observing that § 853's relation-back doctrine is consistent with the "long-recognized common law 'taint theory'"), citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 627 (1989), and *United States v. Stowell*, 133 U.S. 1, 16–17 (1890). As a result, a third-party claimant must assert an interest in the proceeds of an offense that is superior to the defendant's at the moment that offense was committed in order to assert, in a subsequent forfeiture proceeding, an interest in those proceeds that is superior to that of the government.

But where proceeds are unavailable because, as relevant here, they have become "commingled with other property which cannot be divided without

---

[3] 21 U.S.C. § 853(c) (2016) provides:

> All right, title, and interest in property described in subsection (a) [defining criminal proceeds] vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

difficulty," § 853(p)(1)(E), "the court shall order the forfeiture of any other property of *the defendant*," § 853(p)(2) (emphasis added), up to the value of the missing proceeds. This so-called "substitute assets" provision thus "gives the government the ability to receive, in essence, a general judgment against the defendant." *United States v. Voigt*, 89 F.3d 1050, 1086 n.21 (3d Cir. 1996), quoting Arthur W. Leach & John G. Malcolm, *Criminal Forfeiture: An Appropriate Solution to the Civil Forfeiture Debate*, 10 Ga. St. U. L. Rev. 241, 295 n.164 (1994).

Whether property is forfeited as proceeds or as substitute assets is of particular import here because § 853(c)'s relation-back doctrine does not apply to substitute assets. The text of § 853(c) explicitly references § 853(a), which defines proceeds, but makes no mention of § 853(p), which defines substitute assets. *Cf. United States v. Gotti*, 155 F.3d 144, 149 (2d Cir. 1998) (holding that the materially similar RICO forfeiture provision did not permit pretrial restraint of substitute assets because the relevant provision included a specific reference to the subsection defining proceeds and not the one defining substitute assets). In the same vein, the Supreme Court recently observed in *Honeycutt v. United States*, that "§ 853(c) applies to tainted property only." – U.S. –, 137 S. Ct. 1626, 1633 (2017). And in the absence of the relation-back doctrine, the statute is less than

clear about when the government's interest in substitute property vests.[4] The result is that, if the property is forfeited as a substitute for offense proceeds, there could be a gap between the moment of the offense conduct and the vesting of the government's interest in the property. A third party's interest could potentially attach during that interval.

The two-step procedure for completing a forfeiture created by § 853 and Rule 32.2, however, fails to recognize that possibility. At stage one of that procedural framework, before entering a preliminary order of forfeiture, the court is directed to adjudicate the government's interest vis-à-vis the defendant "without regard to any third party's interest in the property." Rule 32.2(b)(2)(A); *see also* 21 U.S.C. § 853(k) (prohibiting third parties from intervening in the initial forfeiture proceedings of a criminal case). And at stage two, before entering a

---

[4] District courts in our Circuit have come to different conclusions on that issue. *Compare United States v. Peterson*, 820 F. Supp. 2d 576, 585 (S.D.N.Y. 2011) (vests upon return of grand jury indictment noticing forfeiture), *with Kramer*, 2006 WL 3545026, at *6–8 (vests, at the earliest, when defendant is convicted), *and United States v. Jennings*, No. 5:98–cr–418, 2007 WL 1834651, at *4 (N.D.N.Y. June 25, 2007) (vests upon entry of the order granting the motion to forfeit substitute assets); *see also United States v. Egan*, 654 F. App'x 520, 521 & n.1 (2d Cir. 2016) (assuming that the government's interest vests, "at the very latest, upon entry of [a preliminary] order of forfeiture concerning that property" but declining to decide precisely when vesting occurs).

8

final order of forfeiture, the court resolves any third-party petitioner's interests vis-à-vis the defendant. *See* 21 U.S.C. § 853(n)(6)(A) (discussing whether the petitioner's interests are superior to any interests "of the defendant"). Frequently, the government will be seeking to forfeit offense proceeds, and, accordingly, by operation of the relation-back doctrine, the government's interest in the contested property will be identical to that held by the defendant at the time of the offense, such that those two steps will also conclusively determine the third-party's interests vis-à-vis *both* the government and the defendant. But in the case of substitute property, where the government's interest could have vested after the time of the offense, there is no procedure for determining whether a third-party petitioner's interest, which may have been inferior to the *defendant's* (or nonexistent) at the moment of the offense conduct, could nevertheless be superior to the *government's* later-attaching interest. This appeal concerns the consequences of that glitch in § 853's procedural structure.

II.     **Factual and Procedural History**

Between 1994 and 2004, Eleanor Daugerdas's husband, Paul Daugerdas, was engaged in a massive conspiracy to commit tax fraud and tax evasion. Paul used his positions first as a tax partner at Altheimer & Gray and subsequently as

9

the managing shareholder and head of the tax practice at the Chicago office of

Jenkens & Gilchrist ("J&G"), to design, market, and implement elaborate but

fraudulent tax shelters intended to help his clients evade their tax obligations.

His scheme generated more than $164 million in criminal proceeds.[5] Paul was

indicted in June 2009 and ultimately convicted by a jury in 2013 for his role in the

scheme.

Paul funded the Accounts at issue here using money J&G paid him for his

work at the firm, all of which was implicated in the scheme. Eleanor apparently

does not contest that the funds in the Accounts are traceable to the payments

Paul received from J&G, nor does she contend that the Accounts contained funds

derived from any independent source. Instead, as described below, both husband

and wife have claimed that income from Paul's tax-fraud clients was untraceably

commingled with other non-tainted funds of the law firm while still in the law

---

[5] In its brief, the government asserts that Paul's scheme generated "at least $180 million in criminal proceeds." Appellee's Br. at 2. It appears to draw that number from the sixth superseding indictment filed against Paul on July 1, 2013. *See id.*, citing No. 1:09-cr-581, Dkt. No. 644. However, in the preliminary order of forfeiture, the district court found that the government had only established $164,737,500 worth of proceeds by a preponderance of the evidence at trial. App. at 103–04. We assume the latter sum is the correct one for the purposes of this appeal.

firm's accounts, before money was disbursed to him, and that such commingling severs the traceable link between Paul's offense conduct and the Accounts.

### A. Paul's Challenges to the Forfeiture

Throughout his criminal proceedings, Paul contested the forfeiture of the Accounts. Paul raised his initial challenge in response to the government's attempt to restrain some of his assets, including the Accounts, following a mistrial caused by juror misconduct. Paul moved to vacate those restraints so that he could use the funds to obtain counsel. He asserted that J&G had commingled the fees collected from his fraudulent clients with non-tainted income from other sources before disbursing the money to him, and accordingly, in order to forfeit the Accounts, the government would have to trace the funds therein to those tainted fees. The district court denied Paul's motion on two alternative grounds: First, it held that Paul had failed to demonstrate that he would be unable to pay his legal fees without access to the Accounts. Second, it held that the government had carried its burden to show that, because all of the tax shelter fees paid to J&G "were generated through the criminal acts of Daugerdas and his coconspirators," "none of [the funds at issue] would have been obtained but for the fraudulent

scheme, . . . and they are subject to seizure as 'proceeds' of the fraudulent scheme." Gov't Addendum at 5.

In his sentencing proceedings, Paul reiterated his commingling argument. The district court again rejected that argument, concluding that the Accounts were forfeited as "proceeds of the fraudulent scheme." Gov't Addendum at 18. The day after Paul's sentencing hearing, the court entered a preliminary order of forfeiture in the amount of $164,737,500 that included, among the enumerated property to be forfeited, the Accounts.

In September 2016, we affirmed the entry of that order. *See United States v. Daugerdas* ("*Daugerdas I*"), 837 F.3d 212, 218 (2d Cir. 2016). Paul once again made his commingling argument, which we rejected as follows:

> The J&G account from which Daugerdas was paid held only the funds received by the Chicago office. The trial evidence established that the entirety of the tax-shelter fee income received by J&G's Chicago office — the pool of money from which Daugerdas was paid — was generated by Daugerdas's criminal acts. Based on this evidence, the district court did not clearly err in concluding that the funds located in Daugerdas's various accounts were the proceeds of his frauds.

*Id.* (internal citations omitted).

12

At no point during his criminal proceedings or on appeal did Paul argue that the Accounts were not forfeitable because they no longer belonged to him, and neither court addressed whether the Accounts would be forfeitable as substitute property under those circumstances.

B.      *Eleanor's Petition*

As noted above, Eleanor was barred from directly intervening in Paul's criminal proceedings to assert a claim to the forfeited property. *See* 21 U.S.C. § 853(k)(1). Accordingly, in August 2014, while Paul's direct appeal was pending, Eleanor filed a petition for a determination of her third-party claims to the Accounts pursuant to 21 U.S.C. § 853(n). Like her husband, Eleanor asserted that in order to forfeit the Accounts as offense proceeds, the government was required to — and did not — trace the money in the Accounts all the way back to the income J&G received from her husband's tax-fraud clients before those funds were commingled with non-tainted funds in J&G's accounts. Eleanor did not, however, allege that commingling had actually occurred in the law firm's accounts; instead, she merely claimed that the government's proof that such commingling had *not* occurred was incomplete. *See* App. at 121–22, ¶ 14 (asserting that "[t]he government has *failed to sufficiently allege* that [the Accounts]

13

had a nexus to the crime" because its supporting affidavit "*does not analyze* any of the deposits into Jenkens & Gilchrist accounts or other disbursements from these accounts") (emphasis added). Eleanor contended that, in the absence of such an analysis, the Accounts were forfeitable only as substitute property. Accordingly, Eleanor argued, because the government is limited to recovering substitute property from the *defendant*'s assets, although Eleanor's interest in the Accounts was not superior to her husband's when he committed his fraud, her interest in them was nevertheless superior to that of the government at the time of the forfeiture proceedings.

The government moved to dismiss Eleanor's petition. The district court granted the government's motion and dismissed the petition for lack of statutory standing and failure to state a claim. It observed that Eleanor's petition sought to assert that the Accounts were substitute property rather than the proceeds of Paul's offense. It determined, however, that the previous rulings in Paul's underlying criminal proceedings had established that the Accounts were forfeited as proceeds, and § 853(n) did not permit third-party petitioners such as Eleanor to relitigate that issue. Once the funds in the Accounts were deemed to be proceeds, pursuant to § 853(c), the government's interest vested at the

14

moment those proceeds came into being. Because Eleanor did not assert any interest in the funds in the Accounts at that moment, the district court concluded that her petition failed to state a claim.

Eleanor timely appealed.

### III.  Analysis

We review a district court's legal conclusions regarding forfeiture *de novo* and its factual determinations for clear error. *Daugerdas I*, 837 F.3d at 231.

As a preliminary matter, we agree with the district court that Eleanor's current § 853(n) petition must be dismissed, although we arrive at that conclusion by a different route. Section 853(n) directs third parties to file a sworn petition asserting the nature and extent of their interest. Rule 32.2(c) provides for the validity of that petition to be adjudicated in a manner similar to a civil case: the government may respond with a motion to dismiss, Rule 32.2(c)(1)(A), and the court may either grant that motion and dismiss the petition, or permit the parties to engage in discovery before holding a hearing on the merits of the petition, Rule 32.2(c)(1)(B). On a motion to dismiss, a § 853(n) petition is evaluated on the same standard as a civil complaint on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See United States v. Watts*, 786 F.3d 152, 161 (2d Cir.

2015). Thus, we take all factual allegations alleged in the petition to be true, Rule 32.2(c)(1)(A), but we need not do the same for legal conclusions, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to prevail on her petition, Eleanor must establish that the Accounts are forfeited only as substitute property pursuant to § 853(p)(2), rather than as proceeds of crime, because they contain proceeds that have been irrevocably commingled with untainted property, as described in § 853(p)(1)(E). But Eleanor's petition does not include any facts indicating that commingling actually occurred. Instead, she alleges only that the government has not adequately established that the funds in the account are properly traceable to fraud proceeds. That is a legal argument, not a factual one, and therefore is not required to be accepted as correct. The petition is thus devoid of any plausible factual allegations that the forfeited property was, in fact, substitute property rather than criminal proceeds.

When presented with that point at oral argument, however, counsel responded that Eleanor should be entitled to try to cure the defect by pleading

additional facts about the commingling of funds that she contends occurred.[6] We agree, because, contrary to the district court's assertion that Eleanor's claim would be barred for lack of standing even if it were adequately pleaded, we conclude that if such facts exist, denying Eleanor the opportunity to present a viable petition would raise significant due process concerns.[7] To make clear why

---

[6] The district court did not consider whether any such commingling by the firm would, as a matter of law, actually defeat a finding that Paul's law firm income constituted the proceeds of his crimes (although, in Paul's case, it found as a factual matter that such commingling had not occurred, and we affirmed). The parties did not raise or brief that issue here. Accordingly, like the parties, we assume without deciding that if Paul's fraudulently earned legal fees were deposited into a firm account that also contained other, legitimately earned income before all or part of those fees were passed through to Paul, the sojourn of the fraudulently obtained fees in the firm account would constitute sufficiently irreversible commingling to vitiate traceability, as described in § 853(p)(1)(E). We merely note that it is not self-evident why, if Paul's partnership compensation was entirely derived from such fees, his income could not itself be considered the proceeds of fraud. We leave that issue to be addressed by the district court if the factual predicate for commingling is adequately alleged in Eleanor's anticipated amended pleading, and the question is properly raised by the government.

[7] Eleanor did not seek leave to replead from the district court, and so ordinarily we would have discretion to treat that issue as forfeited. But neither the defendants nor the district court relied on the pleading deficiencies identified by this Court as a basis for dismissal. Instead, the district court considered itself bound by its conclusion in Paul's criminal case that the funds in the Accounts were proceeds of his crime. On that understanding, no amended factual pleading could have permitted Eleanor to assert her claim. Eleanor thus had no reason to seek to leave to amend her petition along the lines discussed above. For that reason, and because of the significant constitutional rights potentially at stake

17

re-pleading would not be futile, it is necessary to understand the procedural

interests at stake.

### A. Statutory Standing under § 853(n)

"It is . . . well settled that section 853(n) provides the exclusive means by

which a third party may lay claim to forfeited assets." *DSI Assocs. LLC v. United*

*States*, 496 F.3d 175, 183 (2d Cir. 2007). Accordingly, we must determine whether

Eleanor could assert her argument in a § 853(n) proceeding. The district court

determined that she could not, and we agree that, in the absence of any

constitutional concerns, the statute would not provide an avenue for her claims,

even if they were adequately pled.

To the extent that the Accounts constitute proceeds of Paul's offense, or

property traceably derived from such proceeds, the government's claim to them

would clearly be superior to Eleanor's interest. As discussed above, § 853(c)'s

relation-back doctrine causes the government's interest in offense proceeds to

vest as soon as they come into existence, and that vested interest will trump the

---

here, we exercise our discretion to permit Eleanor an opportunity to replead. *See, e.g.*, *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 89–90 (2d Cir. 2018) (in analogous circumstances, permitting plaintiffs to replead who had not sought leave to replead below).

claim of every subsequent gratuitous transferee (such as Eleanor) thereafter. In other words, the government's interest in the offense property "relates back" to the time of the offense.

The question of whether Eleanor can assert her interest in a § 853(n) proceeding becomes more complicated if she can show that the Accounts are not themselves proceeds, but are forfeitable only as substitute property. As discussed above, § 853(p)(2) directs that to be forfeited, substitute property must be the property "of the defendant." *See Lester*, 85 F.3d at 1412 (highlighting that "only the substitute '*property of the defendant*' may be forfeited to the Government") (emphasis in original); *see also United States v. Surgent*, No. 04-cr-364, 2009 WL 2525137, at *22 (E.D.N.Y. Aug. 17, 2009), abrogated on other grounds by *United States v. Awad*, 598 F.3d 76, 79 (2d Cir. 2010) ("[T]he government must show that any alleged substitute property is property 'of the defendant' before an order forfeiting that property may be entered."). But because the relation-back doctrine of § 853(c) does not apply to substitute property as defined in § 853(p), there is ambiguity as to when the government's interest in a defendant's non-tainted substitute assets vests and thereby cuts off that defendant's ability to transfer those assets gratuitously to third parties.

Eleanor contends that she took ownership of the Accounts largely before any event that would have even arguably caused the government's interest in them to attach,[8] and therefore they cannot be taken from *her* to satisfy what amounts to a personal judgment against her husband. Eleanor's argument that recovery should be limited to the defendant's own untainted assets is wholly consistent with the principles that would be applied in ordinary civil litigation. Outside of a bankruptcy proceeding, it is generally not permissible to satisfy an

[8] Eleanor states that the bulk of the transfers took place before Paul was indicted; however, at least three of the relevant transactions occurred after the government filed a superseding indictment including the forfeiture count. The parties have not addressed whether all or part of the funds in the Accounts should be deemed to be Paul's property rather than Eleanor's, either because of some defect in the conveyance to her or because of the timing of those transfers, and none of the previous opinions in this case have addressed the issue. We note, however, that the legislative history of the materially similar RICO forfeiture statute evinces a clear intent that the forfeiture provisions "should be construed to deny relief to third parties acting as nominees of the defendant or who knowingly engage in sham or fraudulent transactions." *United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000), quoting S. Rep. No. 98-225, at 3392 n.47 (1984). Courts have accordingly refused to recognize property interests in similar situations if the transferee never exercised "dominion and control" over the property, *see United States v. Coffman* ("*Coffman II*"), 612 F. App'x 278, 287 (6th Cir. 2015); *Morgan*, 224 F.3d at 343, or if the transfer was otherwise invalid as fraudulent, *see Surgent*, 2009 WL 2525137, at *28; *cf. United States v. Carrell*, 252 F.3d 1193, 1204 (11th Cir. 2001) (discussing the "innocent owner" doctrine in the context of a civil forfeiture of property). That issue, too, is left to the district court to consider in the first instance if properly raised.

*in personam* judgment against one person by seizing property owned by another, nor can a judgment creditor claw back property that a solvent judgment debtor previously gave to third parties, even gratuitously, to satisfy the judgment.

But although the relation-back doctrine may not apply to substitute property as a general matter, § 853(n) (perhaps as a result of Congressional oversight) effectively imposes the temporal limitations of the relation-back doctrine even on third-party claims to substitute assets. That provision does not distinguish between contested property initially forfeited as offense proceeds and property forfeited as substitute assets; instead, § 853(n)(6)(A) requires that the third party's interest in *any* forfeited property must have been superior to the defendant's "at the time of the commission of the acts which gave rise to the forfeiture."[9]

---

[9] Section 853(n)(6)(A) provides that a third-party petitioner can show a superior right to property subject to forfeiture by establishing that her interest in the property

> [1] was vested in the petitioner rather than the defendant or [2] was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property[.]

(bracketed numbers supplied).

Although the statute does not define the relevant "acts," we have interpreted that language in the context of offense proceeds to refer to the defendant's offense conduct because it is that conduct that generates the forfeiture obligation. *See, e.g.*, *Watts*, 786 F.3d at 166 (explaining that "a third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property *before* the underlying crime was committed") (emphasis in original, internal quotation marks omitted). There has been some

---

We reject Eleanor's argument that the temporal limitation in § 853(n)(6)(A) does not apply to both of its clauses because of the absence of commas setting off the second clause (which would have made clearer that the qualifying temporal limitation governs both of the alternative verbs). Section 853(n)(6)(A) describes the emergence of both kinds of property interests with which it is concerned in the past tense — a right that "was vested" or an interest that "was superior." The use of the past tense verb "was vested" requires specification of some point in the past at which the vesting occurred, and the only time period referenced in the provision is "the time of the commission of the acts which gave rise to the forfeiture." Accordingly, as the Ninth Circuit pointed out in *United States v. Hooper*, "[t]o make sense of [§ 853(n)(6)(A)], it is necessary to read the temporal requirement — 'at the time of the commission of the acts which gave rise to the forfeiture' — as applying to both 'vested in the petitioner rather than the defendant' and the alternative 'or was superior to any right, title, or interest of the defendant.'" 229 F.3d 818, 821 (9th Cir. 2000) (drawing on both textual analysis and legislative history). We ourselves have said as much in *United States v. Watts*, where we explained that "[t]he requirement that the petitioner's interest be evaluated 'at the time of the commission of the acts' governs our analyses of *both* when the property became 'vested in the petitioner' and when the petitioner's interest became 'superior to any . . . interest of the defendant.'" 786 F.3d at 166 (emphasis added).

quiet disagreement over whether the same definition of the relevant "acts" applies in the context of substitute property. Some have assumed that the term "acts" in § 853(n)(6)(A) refers to the defendant's criminal conduct, as it does in the context of proceeds, while others have argued that it refers to various acts of the government, for example, when the government first tried and failed to collect tainted assets from the defendant. *See, e.g.*, *United States v. Erpenbeck*, 682 F.3d 472, 478 (6th Cir. 2012). Courts coming down on both sides of the question have assumed that the answer turns on when the government's interest vests, and accordingly, those courts holding that the relation-back doctrine applied to substitute property under § 853(n)(6)(A) have generally concluded that the relevant "act" is the offense conduct,[10] whereas courts holding that the doctrine does not apply have identified subsequent acts that might cause the government's interest to vest.[11]

---

[10] *See, e.g.*, *In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005) (holding that "[b]ecause a forfeiture is effective at the time of the commission of the act giving rise to the forfeiture," the claimant was required to prove that he had a legal interest in the substitute assets when the offense conduct began) (internal quotation marks and alteration omitted).

[11] *See, e.g.*, *Erpenbeck*, 682 F.3d at 478 (holding that a third party asserted a plausible claim to substitute property where its interest attached before the property became subject to forfeiture, which the court determined was not "until

23

But § 853(n)(6)(A) discusses the rights of a third party vis-à-vis the *defendant*, and makes no mention of the government. Reading the provision to turn on when the government's interest vests requires an assumption that the government's interest is identical to the defendant's. In the context of substitute assets, that is not the case, precisely because the § 853(c) relation-back doctrine does not apply. *See Erpenbeck*, 682 F.3d at 478; *cf. Luis v. United States*, – U.S. –, 136 S. Ct. 1083, 1090–93 (2016) (plurality opinion) (holding that the government could not obtain a pretrial restraint on defendant's untainted assets because those assets still belonged to the defendant, regardless of whether they might subsequently be subject to forfeiture as substitute property).[12] We therefore see

---

the tainted assets exceeded the government's grasp"); *Jennings*, 2007 WL 1834651, at *3 (holding that to determine whether a third party was entitled to a portion of forfeited substitute assets under § 853(n)(6)(A), "it is necessary to analyze when the assets vested in the U.S. Government"). We note, however, that a prior unpublished 6th Circuit opinion apparently determined that the relevant act is, indeed, the offense conduct, regardless of the theory under which the property is forfeited. *See United States v. O'Brien*, 181 F.3d 105 (table), 1999 WL 357755, *2 (6th Cir. 1999).

[12] In *Luis*, a plurality of the Supreme Court also suggested that § 853(n)(6)(A) is, in fact, concerned with the government's interests insofar as it stated that the provision "exempts certain property from forfeiture when a third party can show a vested interest in the property that is 'superior' to that of the *Government*." 136 S. Ct. at 1091 (emphasis added). As discussed above, *Luis* did not concern third-party petitions brought under § 853(n) and we therefore do not believe ourselves

24

no basis to conclude that the requirements of § 853(n)(6)(A) are to be evaluated as of the vesting of a later-attaching interest in the government. Instead, applying standard tools of statutory interpretation to the plain text of the statute provides ample support for our conclusion that, in either the context of offense proceeds or substitute property, the relevant "act" under § 853(n)(6)(A) is the underlying criminal conduct that triggers the forfeiture obligation.

First, there is no indication in the statutory text that we should be looking for a different act in the context of substitute assets. Section 853(n)(6)(A) does not distinguish between third-party claims against proceeds and such claims against substitute assets. The phrase "acts which *gave rise to* the forfeiture" is written broadly and seems to contemplate a fairly attenuated chain of causation: one could easily conclude that the defendant's offense conduct *is* the act giving rise to the forfeiture of his untainted substitute assets because it is that act that generates

---

bound by dicta concerning the claims that can be raised in those proceedings.

Similarly, in *United States v. Watts*, in the course of explaining the effect of § 853(c)'s relation-back doctrine on third-party claims to proceeds, we stated that "a third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property . . . before the government's interest vested." 786 F.3d at 166 (internal quotation marks omitted). Because substitute assets were not at issue in that appeal, however, that assertion does not bind us in the present case.

the forfeiture obligation, notwithstanding that additional intervening steps would need to occur before some specific untainted property was ultimately forfeited. And, further bolstering the inference that the same definition applies in both contexts, the statute provides no possible alternative definition of "acts" that might apply to claims against substitute assets.

Second, and in the same vein, the statute uses substantially similar language in § 853(c), which provides that the government's interest in proceeds vests "upon the commission of the act giving rise to forfeiture under this section." There is no real dispute that, in the context of § 853(c)'s relation-back doctrine, the relevant act is the offense conduct. *See Watts*, 786 F.3d at 166 (observing that, under § 853(c), the government's interest vests "upon the commission of the [offense]") (alteration in original, internal quotation marks omitted). And although that doctrine does not itself apply to substitute assets, the *in pari materia* canon of statutory interpretation teaches that "language used in one portion of a statute . . . should be deemed to have the same meaning as the same language used elsewhere in the statute." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993).

Accordingly, we conclude that § 853(n)(6)(A) treats third-party claims against property forfeited the same, regardless of whether the property was forfeited as offense proceeds or as substitute assets. Put another way, even if it is unclear when, exactly, the government's interest in substitute property vests, § 853(n)(6)(A) permits a third-party claim against a defendant's untainted property (out of which an *in personam*-like forfeiture claim might be satisfied) only if that interest arose before the offense took place. Thus, the statute does not appear to authorize Eleanor to present her claim, because her interest concededly arose after Paul's offense conduct began. If Eleanor's interest in Paul's untainted property nevertheless vested before, and is therefore superior to, the government's interest, however, our inquiry cannot end there: as we discuss below, depriving her of a hearing in those circumstances would be inconsistent with the requirements of due process.

### B. *Constitutional Due Process*

In addition to determining that Eleanor lacked statutory standing under § 853(n), the district court declared that Eleanor "has no constitutional right to stand in her husband's shoes at this juncture and re-assert the due process claims that he has already litigated here and in the Second Circuit." App. at 200. We

27

disagree. "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979). The Due Process Clause does not permit us to hold that a third party is precluded from asserting, in her own right, her entitlement to property she claims is hers, on the ground that she is bound by a determination that the property belonged to someone else, when that determination was made in a separate proceeding in which she was not permitted to participate. Accordingly, we conclude that if Eleanor can make a plausible claim that the Accounts were forfeitable as substitute assets, rather than as offense proceeds, and that the Accounts were actually under her independent ownership and control before the government's interest in them vested,[13] then the Due Process Clause entitles her to do so, and it was error for the district court to suggest otherwise.

---

[13] Resolving Eleanor's due process claim may well require a determination of whether her interest in the property is superior to the government's, which would in turn require an inquiry into when the government's interest vested in the property. But because Eleanor must overcome several hurdles before that question is reached, we leave it to the district court to take up that inquiry in due course.

That conclusion is based not merely on a theoretical concern for an abstract right to an opportunity to be heard. There are several reasons to think the prior proceedings — from which Eleanor was statutorily excluded — might in fact have been inadequate to fairly determine her interest in the Accounts. A criminal defendant generally will not have the same incentive as a third-party claimant to argue that property subject to forfeiture is not his. The defendant will not end up with the property either way, and he might actually get a windfall if the money he owes is paid off with someone else's property. Indeed, it is notable that, in the present case, Paul never argued that the property should not be forfeited because it belonged to Eleanor, not to him.[14]

We also reject the government's suggestion that a due process problem will not arise until Eleanor has sought and been refused relief pursuant to § 853(i). That provision grants the Attorney General discretion to "take any . . . action to protect the rights of innocent persons which is in the interest of justice and which

---

[14] Moreover, there may be a colorable argument that Rule 32.2's bar on considering third-party interests at the preliminary forfeiture stage would have precluded Paul from arguing that the Accounts could not be forfeited as substitute assets because they belonged to someone else. *See, e.g., United States v. Coffman* ("*Coffman I*"), 574 F. App'x 541, 563 (6th Cir. 2014) (declining to consider the defendant's argument to that effect).

is not inconsistent with the provisions of this section." 21 U.S.C. § 853(i). In *DSI Associates LLC v. United States*, however, we observed that a party facing an imminent deprivation of property in which she claimed an interest "might be able to argue persuasively that the availability of a remedy through the executive branch under section 853(i) . . . [is] insufficient to satisfy the Due Process clause." 496 F.3d at 187. The third-party petitioner in *DSI* was not at that stage: that petitioner was determined to be only a general creditor of the defendant, and thus the extent of its loss, if any — that is, whether it would be able to collect its debt from the defendant's assets — was not yet known. In particular, we observed that DSI had not established that the defendant had no assets outside of the forfeiture from which DSI's interest might be satisfied. *Id.* at 187 n.18. In the present case, by contrast, Eleanor contends that she will be deprived of a vested property interest in the Accounts as soon as the forfeiture is permitted to proceed. An opportunity to ask the Attorney General, acting in her sole discretion, to return to you property that you contend was yours, and should never have been taken from you in the first place, is not an adequate substitute for an opportunity to prevent the taking by presenting your claim of ownership in court before it occurs.

Accordingly, we conclude that Eleanor has a due process right to be heard by the district court on her claim that the Accounts are her property and thus may not be forfeited to the government as substitute assets of her husband Paul in order to satisfy an *in personam* order of forfeiture against him. We emphasize, however, that any such right to be heard is contingent on her filing an amended petition plausibly alleging facts supporting the conclusion that the Accounts were not forfeitable from Paul as the "proceeds" of his criminal conduct, but only as accounts containing money that, although in part fraudulently obtained, was then "commingled with other property which cannot be divided without difficulty," 21 U.S.C. § 853(p)(1)(E). The inability of Paul, who presumably had inside access to the financial practices of the law firm, to demonstrate such commingling, *see* note 5 *supra*, warrants some skepticism about whether Eleanor can do so, but as we have held above, she is not bound by an adjudication of that issue against him in a proceeding in which she was not permitted to participate.

## CONCLUSION

For the reasons stated above, we VACATE the district court's order dismissing Eleanor's petition and REMAND for further proceedings consistent with this opinion.

31