19-2822 (L)
United States v. Swartz Family Trust

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2021

(Argued: April 4, 2022        Decided: May 5, 2023)

Docket No. 19-2822 (L), 21-334 (CON)

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

SWARTZ FAMILY TRUST, ORIENTA INVESTORS, LLC,

*Claimants-Appellants*,

CHRISTOPHER SWARTZ,

*Defendant.*

_____

Before:

CALABRESI, LYNCH, and LOHIER, *Circuit Judges.*

In pleading guilty to wire fraud and tax evasion, Christopher Swartz agreed to forfeit to the Government his interests in Jreck Subs, a franchised chain of sandwich shops that he used to perpetrate his fraud. Claimants-Appellants the Swartz Family Trust and Orienta Investors, LLC filed third-party petitions asserting an interest in the forfeited property. The United States District Court

for the Northern District of New York (Hurd, J.) granted the Government's motions to dismiss the petitions, finding that the Trust's petition was not submitted before the thirty-day deadline to file such petitions expired and that Orienta failed to state a claim under the forfeiture statute, 21 U.S.C. § 853(n), as either the holder of an interest superior to the Government or as a bona fide purchaser for value. The District Court also denied Orienta's motion for reconsideration, as well as Orienta's motion for leave to amend its petition. We conclude that the Trust's petition was correctly dismissed as untimely, and that Orienta's petition does not state a claim. We remand, however, to allow the District Court to further consider Orienta's motion for leave to amend its petition with respect to its claim that it is a bona fide purchaser for value. Accordingly, the judgment of the District Court is **AFFIRMED** in part and **VACATED** in part, and the case insofar as it relates to Orienta is **REMANDED** for further proceedings to permit the District Court to reconsider whether Orienta should be granted leave to amend its bona fide purchaser claim.

ELISSA HART-MAHAN, Attorney (David A. Hubbert, Acting Assistant Attorney General, S. Robert Lyons, Chief, Criminal Appeals & Tax Enforcement Policy Section, Katie Bagley, Joseph B. Syverson, Attorneys, *on the brief*), Tax Division, United States Department of Justice, *for* Antoinette T. Bacon, Acting United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee* United States of America.

STEVEN L. KESSLER, Law Offices of Steven L. Kessler, New Rochelle, NY, *for Claimant-Appellant* Swartz Family Trust.

SCOTT M. KESSLER, Akerman LLP, New York, NY (Jacqueline M. Arango, Akerman LLP, Miami, FL, Katherine E. Giddings, Akerman LLP, Tallahassee, FL, *on the brief*), *for Claimant-Appellant* Orienta Investors, LLC.

LOHIER, *Circuit Judge*:

Christopher Swartz, an entrepreneur from Watertown, New York, masterminded a years-long scheme centered on his ownership and control of Jreck Subs ("Jreck" or the "Asset"), a franchised chain of sandwich shops popular in Central and Northern New York. After his arrest, Swartz pleaded guilty in 2016 to wire fraud and tax evasion and agreed with the Government to forfeit his interests in Jreck. Four claimants, including Claimants-Appellants the Swartz Family Trust (the "Trust") and Orienta Investors, LLC ("Orienta"), filed petitions asserting an interest in Jreck Subs. The Government moved to dismiss the petitions. In the two challenged orders before us, the United States District Court for the Northern District of New York (Hurd, J.) dismissed the petitions filed by the Trust and Orienta after concluding that (1) the Trust's petition was untimely and (2) Orienta's petition failed to state a claim either that Orienta had a superior interest in Jreck or that it had a legal interest in the property as a bona fide purchaser for value. The District Court also denied Orienta's request for leave to amend its petition, as well as Orienta's subsequent motion for reconsideration of the dismissal of its petition. The Trust and Orienta appealed, challenging the

District Court's judgment dismissing the petitions and, in Orienta's case, the denial of its motion for reconsideration.

We conclude that both petitions were properly dismissed and that it was not error for the District Court to consider the record of Swartz's criminal proceedings, including his plea agreement, in determining that the Asset was subject to forfeiture. However, the technical basis for the District Court's dismissal of Orienta's bona fide purchaser claim persuades us to remand the case insofar as it relates to that claim in order to give the District Court an opportunity to reconsider whether to grant Orienta leave to amend the claim.

Accordingly, the judgment of the District Court is AFFIRMED in part and VACATED in part, and the case relating to Orienta is REMANDED for further proceedings to permit the District Court to reconsider whether Orienta should be granted leave to amend its bona fide purchaser claim.

## BACKGROUND

The following background is based primarily on the District Court's recitation of the facts as supplemented by the record of Swartz's criminal proceeding, and is focused only on the aspects of Swartz's scheme that impact the viability of the ownership claims of the Trust and Orienta.

4

## I.  Factual Background

Swartz engaged in a decades-long criminal scheme involving frequent transfers of Jreck's ownership among several entities created by Swartz and others.  After the scheme unraveled, Swartz admitted that these transfers, along with "multiple name changes to businesses he controlled," were designed "to make the traceability of ownership more difficult" and to complicate and forestall "seizure and collection" by his creditors.  App'x 54.

Jreck was founded in the 1960s by five individuals, including Swartz's father, Thomas.  Thomas purchased a minority interest in Jreck in 1972 and acquired full ownership in 1991 by issuing promissory notes to the other four founders.  In 1996, the same year that Thomas was convicted of various financial crimes in federal court, see United States v. Pack, No. 96-CR-2, 1996 WL 760178, at *1 (N.D.N.Y. Dec. 27, 1996), he transferred Jreck to Swartz.  Swartz quickly took the private franchise company public using a reverse merger and renamed the new public company "Jreck Subs Group, Inc."

In 2000 Swartz, by then Jreck's Chief Executive Officer and Director, renamed the company "Ultimate Franchise Systems, Inc."  Swartz then bought more restaurants by misappropriating funds from Ultimate Franchise,

improperly selling special preferred stock to new investors and issuing promissory notes to other investors. Swartz's efforts resulted in a decline in the value of Ultimate Franchise stock. Indeed, until 2004, Ultimate Franchise never reported an operating profit or paid any income tax.

In 2002 Swartz formed a new company, Grace Ventures Group, Inc., and caused Ultimate Franchise to "sell" an 80 percent stake in the Asset to Grace Ventures for nearly $2 million, consisting of a $1.3 million promissory note and a purported $696,000 cash payment raised from other sources. By 2004 Swartz had caused Ultimate Franchise to write off the $1.3 million promissory note in exchange for a purported one-time payment of $475,000 from Grace Ventures to Ultimate Franchise. Swartz later admitted that Ultimate Franchise did not actually keep the remaining 20 percent stake in the Asset because he used funds fronted by other investors to acquire full ownership of the Asset using a promissory note from Grace Ventures that he never intended to repay. As a result, Swartz gained full control over the Asset at a substantial discount. In 2005 Swartz sought to conceal his ongoing control of the Asset from creditors by assigning his 100 percent stake in Grace Ventures (and thus the Asset) to the Swartz Family Trust.

The District Court found that "[b]ut for th[e] fraudulent transfer to Grace Ventures, Swartz would not have obtained full control of the Asset at that time," and that the transfer "was in fact a sham transaction made in furtherance of the . . . fraudulent scheme." Sp. App'x 21. The District Court thus determined that the entire Asset represented proceeds of Swartz's wire scheme and was forfeitable in 2002, when Grace Ventures was formed, or at the latest in 2005, when Swartz assigned control over the Asset to the Trust.

By 2009 some of Swartz's creditors had filed lawsuits to recover their funds. In response, as the District Court found, Swartz entered into a $1.5 million deal with Holding Capital Group, Inc. ("HCG"), a private equity firm, whereby: (1) Swartz created several new entities, including Jreck Holdings, LLC; (2) Swartz and the Trust vested ownership of the Asset in Jreck Holdings; (3) Swartz split ownership of the holding company between the Trust (approximately 70 percent) and an HCG entity (approximately 30 percent); and (4) HCG loaned Swartz at least $639,000 in exchange for additional promissory notes.

In October 2011 HCG sued Swartz for defaulting on its promissory notes. Swartz responded by renaming several of the Jreck entities (for example, "Jreck

7

Holdings" became "Focus Acquisitions") and seeking new investors to buy out HCG's stake in the company. Swartz's friend, "W.R.," along with one of W.R.'s clients, "E.S.O.," formed Orienta, in which they had equal stakes, to invest in the HCG buyout. In May 2012 Orienta purchased HCG's 30 percent stake in Jreck Holdings/Focus Acquisitions and acquired HCG's promissory notes for approximately $1 million.

By 2013 the total amount of civil judgments from claims brought by various lenders and investors against Swartz exceeded $6 million. In 2015, with the help of Dan Patterson, Swartz's father-in-law and the Trust's eventual trustee, Swartz attempted to take Jreck Subs public a second time through another reverse merger. But the Government's criminal prosecution prevented any publicly traded shares from being sold, and the public offering was unwound following Swartz's guilty plea.

## II. Procedural History

On September 19, 2016, Swartz pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343 and tax evasion in violation of 26 U.S.C. § 7201. Swartz also consented to the entry of an order, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), directing the forfeiture of "any and all interests" he had in the

8

Jreck Subs franchise, including franchise rights, trademarks, and other brand-related intellectual property. Sp. App'x 16. As part of his plea agreement, Swartz admitted that he "was in control of, and exercised dominion over, the Jreck Subs franchise between 2002 and 2015 under various entity names," App'x 47, and that, in order to avoid his creditors, he "continued to disguise his true dominion over and control of businesses using layers of nominee entities, including, but not limited to, the [] Trust," App'x 54. In July 2017 Swartz was sentenced to 150 months' imprisonment and ordered to pay $21,041,249 in restitution to the victims of his fraud and $4,619,340 to the Internal Revenue Service for tax evasion.

On September 23, 2016, the District Court entered a preliminary order of forfeiture. As required by statute, the Government began notifying potential claimants about the order. Among the claimants were Patterson, by then the Trust's trustee ("Trustee"), who was notified on February 16, 2017, and Orienta, which received notice on June 5, 2017. Orienta timely filed a petition under 21 U.S.C. § 853(n) on July 3, 2017, claiming that it had a cognizable interest in the Asset.

On August 4, 2017, the District Court entered an amended preliminary order of forfeiture to add a money judgment in the amount of $12,535,400. The entry of the amended preliminary order of forfeiture spurred the filing of four petitions asserting a claim to the Asset. As relevant here, on August 31, 2017, the Trust moved for leave to file a petition, acknowledging that the filing deadline had passed and that its petition was therefore untimely. Attempting to redeem its untimely filing, the Trust filed a new petition on September 15, 2017, purporting to respond to the amended preliminary order of forfeiture instead. Orienta also filed an amended petition on September 21, 2017, after receiving notice of the amended preliminary order of forfeiture.[1]

On September 26, 2017, the Government moved to dismiss the Trust's first petition as untimely. Then, on November 7, 2017, the Government moved for a protective order. The District Court did not rule on the Government's motion to dismiss. Instead, on November 20, 2017, it denied the Government's motion for a protective order and directed the Government to respond to the claims submitted by the Trust, Orienta, and two other petitioners. On December 20, 2017, the Government filed an omnibus motion to dismiss all of the petitions,

---

[1] Orienta's amended petition merely added arguments regarding another petitioner, Change Capital. See App'x 390–91, 395–99.

including the Trust's petition for which its original motion to dismiss was still outstanding. On March 16, 2018, the Government withdrew its motion to dismiss Orienta's petition, noting that "further factual development through discovery" would be needed to determine if Orienta's petition stated a claim. App'x 986.

A few months later, in May 2018, the Government moved under Federal Rule of Criminal Procedure 32.2(b)(7) for a court-ordered interlocutory sale of the Asset. For its part, Orienta moved to enjoin the Government from amending certain vendor contracts, arguing that the contract amendments would devalue Orienta's interest in the Asset. On August 9, 2019, the District Court granted the Government's motion to dismiss with respect to the Trust's petition, denied Orienta's motion for injunctive relief, and granted the Government's motion for an interlocutory sale of the Asset.[2]

In July 2020, following limited discovery, the Government renewed its motion to dismiss Orienta's petition. On January 7, 2021, the District Court

---

[2] Although the precise date the Asset was sold is not entirely clear from the record, the record suggests that the sale "closed at the end of 2019 or the very beginning of 2020." App'x 1216.

11

dismissed Orienta's petition and, on February 23, 2021, denied Orienta's subsequent motion for reconsideration.

This appeal followed.

## DISCUSSION

### I. Legal Standards

Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853 govern ancillary proceedings following a criminal forfeiture.  See United States v. Watts, 786 F.3d 152, 159–61 (2d Cir. 2015).  Under Rule 32.2(b)(2)(A), a district court must make its initial forfeiture determination (that is, decide whether property is forfeitable) "without regard to any third party's interest in the property."  Fed. R. Crim. P. 32.2(b)(2)(A).  Once the district court determines that the criminal defendant's interest in the property is forfeitable, Section 853(c) provides that "[a]ll right, title, and interest in property [subject to criminal forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture."  21 U.S.C. § 853(c).  "[Section] 853(c) reflects the application of the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States,

at the time of the criminal act giving rise to forfeiture." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 627 (1989).

The Government must publicize the order of forfeiture and, "to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture." 21 U.S.C. § 853(n)(1). Third parties may claim an interest in the property deemed forfeitable under Section 853(n). A third party "asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of [direct] notice . . . whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property." Id. § 853(n)(2). The third-party petition "shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." Id. § 853(n)(3).

A third-party petitioner has only two statutory grounds to assert a legal interest in forfeited property. The petitioner may show "that he possessed a

13

'superior interest' at the time of the offense under § 853(n)(6)(A)," or alternatively "that he was a 'bona fide purchaser for value' reasonably without cause to believe that the property was subject to forfeiture under § 853(n)(6)(B)." Watts, 786 F.3d at 175. "Beyond those two limited claims, the provision authorizes no challenges to the forfeitability of a defendant's property by interested third parties." Id.

If a third party files a petition, the district court determines whether the third party has a valid interest in the property. The district court must then either amend or leave unaltered the final order of forfeiture, as appropriate. 21 U.S.C. § 853(n)(6); Fed. R. Crim. P. 32.2(c)(2); see Watts, 786 F.3d at 160–61. While the statutory scheme anticipates a hearing to adjudicate any third-party interests in the property, see 21 U.S.C. § 853(n)(2), Rule 32.2(c)(1)(A) permits the district court to, "on [a] motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason," without a formal hearing, Fed. R. Crim. P. 32.2(c)(1)(A); see Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004). Such a motion "should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." Watts, 786 F.3d at 161 (quotation marks omitted). To survive the motion, "the petition need only state

14

enough facts to state a claim to relief that is plausible on its face." Id. (cleaned up); see Fed. R. Crim. P. 32.2(c)(1)(A) ("For purposes of the motion [to dismiss], the facts set forth in the petition are assumed to be true.").

We review a district court's grant of a motion to dismiss a third-party petition de novo. Watts, 786 F.3d at 161. We assume that all facts alleged in the petition are true and will affirm a dismissal "only where the plaintiff fails to plead any factual content that allows the court to draw the reasonable inference that he is entitled to relief." Id. (quotation marks omitted).

**II.     The Trust's Petition**

As previously described, Section 853(n)(2) requires that a third-party petition be filed "within thirty days of the final publication of notice or [the petitioner's] receipt of [direct] notice, . . . whichever is earlier." 21 U.S.C. § 853(n)(2). The Trust does not dispute that it received direct notice of the District Court's preliminary forfeiture order on February 16, 2017, when the Trustee signed for a certified letter containing the Government's statutory notice. See Trust Br. 52; App'x 279. By way of an excuse, the Trustee asserts that he was incapacitated due to a medical condition "at the time of the letter's receipt and for the weeks surrounding its receipt." App'x 279. But he admits that he

"discovered [the] Government's certified letter by accident in May 2017," after he had "regained [his] cognitive functioning." App'x 284. The Trust's petition was not filed until August 31, 2017, more than six months after the Government's original notice and, even accepting the Trustee's excuse, three months after he "discovered" the letter in May 2017. This obviously falls well after the thirty-day period within which the Trust should have filed its petition.

Undeterred, the Trust argues that its petition was nevertheless timely for two principal reasons.[3] First, the Trust contends that the Government's notice of the preliminary forfeiture order was premature because it was sent before Swartz was sentenced. See Trust Br. 51–54. It is true that the Government served the notice of forfeiture in February 2017 and that Swartz's sentencing (when the order of forfeiture would become final as to him) happened in July 2017. But

---

[3] The Trust alternatively asserts that its petition was timely because (1) the Government abandoned its original motion to dismiss the Trust's petition before filing its omnibus motion, and as a result, (2) the Trust was permitted to litigate its petition for two years before the District Court dismissed it. Neither of these developments, however, sheds light on whether the petition itself was untimely. To the contrary, the petition was filed as an exhibit along with a motion for leave to file an untimely petition under Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure. In its brief in support of its Rule 60(b) motion, the Trust sought "relief from proposed petitioner's failure to timely adhere to the filing requirements of [21] U.S.C. § 853(n)." App'x 376. The nature of the Trust's request itself undermines the Trust's assertion that its petition was timely. But, for the reasons that follow, the Trust's arguments also fail on the merits.

16

that does not render the notice premature. The District Court was required to make a preliminary forfeiture determination "[a]s soon as practical after . . . a plea of guilty . . . is accepted," Fed. R. Crim. P. 32.2(b)(1)(A), and to "enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant," Fed. R. Crim. P. 32.2(b)(2)(B). Rule 32.2 and Section 853(n) also permit the Government to begin ancillary proceedings by notifying third parties as soon as the preliminary order of forfeiture is entered. See Fed. R. Crim. P. 32.2(b)(3) ("The entry of a preliminary order of forfeiture authorizes [the Government] . . . to commence proceedings that comply with any statutes governing third-party rights."); 21 U.S.C. § 853(n)(1); see United States v. Marion, 562 F.3d 1330, 1339 (11th Cir. 2009) ("[O]nce a preliminary order of forfeiture is entered, whether before or after the time criminal judgment is entered, the government is authorized to commence proceedings governing third-party rights."). The date of the defendant's sentencing is relevant to the ancillary proceedings only to the extent that it extinguishes the defendant's interest in the property. Fed. R. Crim. P. 32.2(b)(4)(A), (c)(2); see also id. at (c)(4) ("An ancillary proceeding is not part of sentencing.").

We conclude that the Government was not required to wait until Swartz's sentencing to begin notifying potential petitioners of the preliminary order of forfeiture or about the ancillary proceeding. See Marion, 562 F.3d at 1339 ("[The] thirty-day period will begin to run from the triggering date, even if it is before criminal judgment is entered."). For the same reasons, we are not persuaded by the Trust's related suggestion that, having received direct notice of the preliminary order of forfeiture, it would have been premature for the Trust to file its petition before other potential claimants also received notice.

The Trust's second response is that the District Court's August 15, 2017 amended preliminary order of forfeiture restarted the thirty-day clock for a timely petition. This response is no more persuasive than the first. The amended preliminary order merely added a money judgment. And as Rule 32.2 makes clear, "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment." Fed. R. Crim. P. 32.2(c)(1); see also United States v. Tolliver, 730 F.3d 1216, 1233 (10th Cir. 2013). Relying on decisions unrelated to forfeiture, the Trust counters that an amended civil complaint generally supersedes and voids the initial complaint upon service. It argues that the same principle should apply to the District Court's amended preliminary order of

forfeiture. We are unpersuaded by this analogy because it is the Trust's own petition, not the court-issued amended preliminary order of forfeiture, that operates as the equivalent of a civil complaint in this case. See United States v. Daugerdas, 892 F.3d 545, 552 (2d Cir. 2018) ("On a motion to dismiss, a § 853(n) petition is evaluated on the same standard as a civil complaint on a motion under Rule 12(b)(6)." (emphasis added)); Fed. R. Crim. P. 32.2(c)(1)(A); 21 U.S.C. § 853(n)(7). Accordingly, we agree with the District Court that the amended preliminary forfeiture order did not restart the Trust's thirty-day time period to file its petition.

For these reasons we affirm the District Court's judgment as to the Trust.

### III. Orienta's Petition

#### A. Orienta's Statutory Standing to Petition

Unlike the Trust's petition, there is no question that Orienta's petition was timely filed. For Orienta, the initial question is whether it has statutory standing to petition the District Court under Section 853(n)(2). Statutory standing is "simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352,

19

359 (2d Cir. 2016) (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 (2014)).

In order to have standing to bring a claim under Section 853(n)(2), a petitioner must demonstrate a "legal interest" in the property at issue. Watts, 786 F.3d at 160–61; 21 U.S.C. § 853(n)(2). "Where the petitioner has no valid interest in the property under state law, the inquiry ends, and the claim fails for lack of standing." Watts, 786 F.3d at 161 (quotation marks omitted).

Orienta asserts two legal interests in the Asset: (1) a security interest in the Asset derived from the promissory notes it acquired from HCG, and (2) an equity ownership interest based on its shares of Jreck Holdings, which later became Focus Acquisitions. The Government agrees that Orienta's security interest in the Asset based on the promissory notes satisfied Section 853(n)(2)'s "statutory standing" requirement—that is, it permitted Orienta to petition the District Court to adjudicate the validity of that interest under Section 853(n)(2). But the Government maintains that Orienta's "ownership of stock in a corporation that owns a corporation that owns the Asset does not" confer statutory standing to petition on that basis. Gov't Br. 58. The District Court agreed with the Government that "the 35 percent equity ownership component

20

of [Orienta's] claim would be subject to dismissal because Orienta, by its own admission, is merely a shareholder at least two corporate levels removed from any legal interest in the Asset."[4] Sp. App'x 52 n.7 (quotation marks omitted).

We agree with the District Court. "The extent of a petitioner's interest in . . . forfeited property is determined in accordance with state law." Watts, 786 F.3d at 161. Resolving the choice-of-law question relating to Orienta's legal interest in the Asset is no easy task. After all, Jreck Holdings and Focus Acquisitions are both incorporated in Delaware, but Jreck Holdings appears to have been formed in New York, while the District Court found that the Asset was transferred in 2015 from Focus Acquisitions to Focus Florida, a Florida company that Focus Acquisitions fully owned. At first blush it would seem that Delaware law applies to determine whether Orienta's equity ownership is a "legal interest" in the Asset; but fortunately for us, it turns out that the answer to that question is the same under Delaware, New York, or Florida law, thus relieving us of the duty to choose the applicable law. In all three States, a member of an LLC has no legal interest in the assets that belong to the LLC. See Del. Code Ann. tit. 6, § 18-701 ("A member has no interest in specific limited

---

[4] Recall that Orienta eventually had a 35 percent equity stake in Jreck Holdings/Focus Acquisitions, the LLC with a stake in the Asset.

21

liability company property."); N.Y. Ltd. Liab. Co. Law § 601 ("A member has no interest in specific property of the limited liability company."); Fla. Stat. § 605.0110(4) ("A member of a limited liability company has no interest in any specific limited liability company property.").  It follows that Orienta's equity interest in Jreck Holdings or Focus Acquisitions is not a legal interest in the Asset sufficient to confer statutory standing to challenge the forfeiture of the Asset.  See Stefan D. Cassella, ASSET FORFEITURE LAW IN THE UNITED STATES, § 23-13(h) (3d ed. 2022) ("Because they lack any ownership interest in the assets of the corporation, shareholders do not have standing to challenge the forfeiture of corporate assets.  The rule is the same for members of an LLC."); see also United States v. Wallach, 935 F.2d 445, 462 (2d Cir. 1991) ("[S]hareholders do not hold legal title to any of the corporation's assets.  Instead, the corporation—the entity itself—is vested with the title.").

Under these circumstances, we conclude that Orienta lacks standing under Section 853(n)(2) to pursue a claim based on its equity ownership interest in Jreck Holdings/Focus Acquisitions.

## B. **Orienta's Superior Interest Claim**

The District Court concluded that Orienta failed to state a plausible claim that it enjoyed a superior interest because Orienta's security interest vested, at the earliest, in 2009 (when HCG, from whom Orienta bought its stake, executed its deal with Swartz),[5] and the Government's interest vested, at the latest, in 2005 (the last year that the Asset could have become forfeitable as proceeds of Swartz's wire fraud scheme). On appeal, Orienta faults the District Court for relying on facts outside of the petition—namely, facts from the record of Swartz's criminal proceedings—to land on 2005 as the year the Asset became forfeitable. We disagree.

To establish a superior interest claim under Section 853(n), a petitioner must demonstrate that it "has a legal right, title, or interest in the property . . . [that] was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A). "Because forfeitable property vests in the government

---

[5] Whether a potential claimant who acquired its interest from a third party may assert its claim as derivative of the preexisting owner's claim appears to be an open question in our Court. Because we conclude either way that Orienta's claim arose after the Government's interest vested, we need not, and do not, address the question.

immediately upon the commission of a criminal act, a third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property <u>before</u> the underlying crime was committed—that is, before the government's interest vested." <u>Watts</u>, 786 F.3d at 166 (quotation marks omitted). Under Rule 32.2(b)(1)(B), "[t]he court's determination" as to forfeitability "may be based on evidence already in the [criminal] record, including any written plea agreement" and "any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); <u>see</u> <u>United States v. Capoccia</u>, 503 F.3d 103, 109–10 (2d Cir. 2007) (holding that a district court is permitted to consider trial evidence in determining forfeiture).

We hold that a district court may rely on the record of a defendant's criminal proceedings to "determine what property is subject to forfeiture under [Section 853]." Fed. R. Crim. P. 32.2(b)(1)(A). In addition, a district court may rely on a preliminary order of forfeiture in determining whether a third-party petition states a claim to the forfeitable property, so long as the third-party petitioner has an opportunity to challenge the factual findings made in support of the order after it has been entered. <u>See</u> <u>Daugerdas</u>, 892 F.3d at 557–58. The

District Court was therefore entitled to rely on the facts contained in both the preliminary forfeiture order and Swartz's plea agreement and other criminal proceedings in concluding that Orienta had failed to state a superior interest claim to the Asset—especially since Orienta's petition did not challenge any of the factual findings in the preliminary order that were relevant to deciding when the Asset became forfeitable. See id.; United States v. 101 Houseco, LLC, 22 F.4th 843, 848–49 (9th Cir. 2022).

As it did in the District Court, Orienta also claims that it has a superior title to the Asset by virtue of a constructive trust, which "entitl[es] its beneficiary to any property acquired by the use of funds stolen from him." Watts, 786 F.3d at 168. We easily reject the claim that a constructive trust exists in Orienta's favor. "[T]he law of constructive trust does not necessarily entitle every crime victim to priority over a defendant's other general creditors." Fed. Ins. Co. v. United States, 882 F.3d 348, 373 (2d Cir. 2018). "Rather, a constructive trust attaches only to the specific property appropriated from a claimant by the offender or that can be traceable thereto." Id.; see also Cassella, supra, at § 23-15(g). Because Orienta does not allege that Swartz used its funds to acquire the Asset, the District Court was right to reject its constructive trust claim.

## C. **Orienta's Bona Fide Purchaser for Value Claim**

Finally, we address Orienta's claim that it has a legal interest in the Asset as a bona fide purchaser for value. To prevail on such a claim, a petitioner must establish by a preponderance of the evidence that it is "a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. § 853(n)(6)(B). A bona fide purchaser claim "allow[s] a limited category of petitioners who acquired an interest in the forfeited property <u>after</u> the government's interest vested to prevail at an ancillary hearing." <u>Watts</u>, 786 F.3d at 169 (quotation marks omitted).

The District Court understandably determined that Orienta's petition did not state a bona fide purchaser claim largely, if not entirely, because Orienta failed to describe its claim as such and, to make matters worse, neglected to cite Section 853(n)(6)(B), which authorizes such a claim. <u>See</u> Sp. App'x 50–51. We agree with the District Court that Orienta's petition fails to state a bona fide purchaser claim. Specifically, Orienta does not allege facts establishing that it obtained a legal interest in the Asset "reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B). Orienta comes

26

closest to stating a bona fide purchaser claim when it describes itself as an "innocent victim[]" of Swartz's fraud, App'x 110, and alleges that Swartz "fraudulently induced Orienta to enter into a purchase agreement," App'x 101. But a petitioner may be a victim of fraud and still reasonably have cause to believe that the purchased property was subject to forfeiture — because, say, the petitioner ignored red flags or otherwise acted unreasonably in completing the deal.

To support its claim that it "had no reason to believe the Asset was connected to any criminal activity," Orienta also points to "the secured notes," and "various closing and due diligence documents" appended to its petition. Orienta Br. 23–24. But none of these documents establishes that Orienta had no reason to believe that the Asset might be forfeited.

In the alternative, Orienta claims that the Government is judicially estopped from arguing that its petition fails to state a bona fide purchaser for value claim. It reminds us that the Government initially moved to dismiss Orienta's petition in 2017, along with the other petitions that were filed, but that after Orienta opposed the motion, the Government withdrew its motion to dismiss as to Orienta without prejudice, stating that additional factual

development was necessary to resolve whether Orienta's petition stated a bona fide purchaser for value claim.  In October 2019 the Government obtained an order authorizing discovery related to Orienta's petition, after which the parties tried, but failed, to settle the case.  Then, in July 2020, the Government moved to dismiss the petition and stay discovery.

"The equitable doctrine of judicial estoppel provides that, '[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"  Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 147 (2d Cir. 2005) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)).  The doctrine applies if "1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel."  DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (quotation marks omitted).  "A district court's decision to invoke

judicial estoppel is reviewed for abuse of discretion." Ashmore v. CGI Grp., Inc., 923 F.3d 260, 271 (2d Cir. 2019).

We conclude that the District Court acted within its discretion when it held that the judicial estoppel doctrine does not apply to prevent the Government from arguing that Orienta's petition failed to state a bona fide purchaser for value claim. In voluntarily withdrawing its motion to dismiss without prejudice, the Government did not concede that the petition stated such a claim. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109, 114 (2d Cir. 1990) (concluding that where the prior case was "dismissed voluntarily in accordance with a stipulation," judicial estoppel did not apply). Nor did the District Court adopt or rely on the Government's withdrawal when it permitted discovery relating to Orienta's claim to proceed.

Nor, for that matter, did the Government obtain any unfair advantage from acceding to some discovery before renewing its motion to dismiss. Orienta claims to have suffered an "unfair detriment" due to increased litigation costs associated with additional discovery. But "all litigation" generates costs, so we have difficulty seeing how any additional costs Orienta may have incurred constitute "an 'unfair detriment' that would lead to judicial estoppel." Ashmore,

923 F.3d at 279 n.11. Finally, we are not persuaded by Orienta's unfounded suggestion that the Government withdrew its motion to dismiss to avoid the entry of a temporary restraining order and to accelerate the interlocutory sale of the Asset.

## D. **Leave to Amend**

The District Court dismissed Orienta's petition with prejudice and "refus[ed] to permit amendment to the petition" because "the 30-day time period in which to file a third-party petition under § 853(n)(2) is ordinarily strictly construed." Sp. App'x 52, 55. The District Court's dispositive reliance on Section 853(n)(2), which provides that a third party must file its petition "within thirty days" of receiving notice, was misplaced. The 30-day deadline is strict but not always fatal. It is intended to promote finality for the Government because "[i]f no third party files a petition within the prescribed time (or no petitioner prevails), the Government emerges with 'clear title to [the forfeited] property.'" United States v. Bradley, 882 F.3d 390, 393 (2d Cir. 2018) (quoting 21 U.S.C. § 853(n)(7)). Where, as here, a third party files its petition before the deadline and moves promptly to amend it, rejecting leave to amend does not always further that purpose. Rather, in limited circumstances, it may be appropriate to

30

permit the petitioner to amend its petition outside the 30-day window. See

Daugerdas, 892 F.3d at 552-53 & n.7 (remanding to allow the petitioner to "try to cure the defect by pleading additional facts about the commingling of funds that she contends occurred," even though the petitioner did not seek leave to amend at the district court).

Orienta timely filed its initial petition, and both the District Court and the Government understood that it intended to pursue its claim to the Asset. Here, two things potentially tip the scales in favor of granting Orienta leave to amend its bona fide purchaser claim. First, the District Court based its dismissal of that claim primarily on a technical issue: Orienta had failed to describe its bona fide purchaser claim as such and neglected to cite Section 853(n)(6)(B), which authorizes such a claim. Second, the Government acknowledged that additional factual development was necessary to resolve whether Orienta's petition stated a bona fide purchaser for value claim. Under these circumstances, it may be "sensible to give claimants the opportunity to amend their petition to provide information to satisfy [Section] 853(n)(3) (if they have it)." United States v. Furando, 40 F.4th 567, 579–80 (7th Cir. 2022) (finding that the district court had erred in dismissing, sua sponte, a petition that it characterized as "conclusory"

and remanding for the district court to "provide either a hearing or an opportunity to amend the petition").

Because the District Court believed that the statutory framework categorically precluded amendment after the 30-day deadline, it does not appear to have considered whether amendment would otherwise have been proper. Accordingly, we vacate and remand to the District Court to reconsider whether Orienta should be granted leave to amend its bona fide purchaser claim.

**CONCLUSION**

We have considered the petitioners' remaining arguments and conclude that they are without merit or abandoned. See United States v. Black, 918 F.3d 243, 256 (2d Cir. 2019). For the foregoing reasons, the judgment of the District Court is **AFFIRMED** in part and **VACATED** in part, and the case relating to Orienta is **REMANDED** for further proceedings to permit the District Court to reconsider whether Orienta should be granted leave to amend its bona fide purchaser claim.